## WILLIAM F. DOWNS vs. THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Implied Contract—Asumpsit Lies to Recover Stolen Money— Attachment on Original Process for Fraud Levied on Property of Embezzler.*

When the law imposes upon a party the duty to restore money or property to another, who is justly entitled to it, that obligation is an implied contract.

An action of assumpsit lies to recover stolen money, although the defendant has not been convicted of the criminal offense

An attachment on original process may be levied upon the property of a defendant alleged to have stolen money from the

plaintiff, under Code, Art. 9, sec. 36, which authorizes such attachments when the plaintiff makes affidavit that the defendant named in the writ is indebted in the sum therein stated, and that he fraudulently contracted the debt or incurred the obligation.

*Decided January 12th, 1910.*

Appeal from the Superior Court of Baltimore City (NILES, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*Joseph P. Merryman* (with whom were *Thos. C. Weeks* and *Harry B. Wolf,* on the brief), for the appellant.

At common law there could be no restitution of stolen goods, nor could their value be recovered out of the property of the thief, because larceny being a public wrong and felony, the remedy was at the suit of the King only and the private injury was merged in the crime. Therefore the remedial statute of 21 Henry VIII, ch. 2, was passed, whereby the prosecuting witness was given restitution either of the goods stolen or their value out of the property of the thief after conviction; the law providing that, if any person be convicted of larceny by the evidence of the party injured, he shall have full restitution of his money, goods and chattels, or the value of them, out of the offender's goods, if he has any, by a writ to be granted by the justices. But, says the commentator, "not before prosecution, for so felonies would be made up and healed." (*Bl.*, c. 27, p. 363.)

This statute of Henry VIII was not operative in Maryland on July 4, 1776. It is not found in *Alexander's British Statutes* nor in *Kilty's Reports;* indeed, it appears never to have been in force in the Province, for the reason that, in 1715 an Act was pased by the Provincial Parliament of a similar character and purpose, being the Acts of 1715, c. 26,

and which provided that the Justices of the County Courts should hold plea of and adjudge and determine all thieving, etc., and on conviction punish by causing the thief to pay four-fold the value of the goods stolen and to return the same to the party aggrieved; the Court to adjudge the value of such goods, and if the thief had no property out of which restitution could be made, to oblige him to satisfy the judgment by servitude.

This Act of 1715 constituted the law of Maryland until the Acts of 1809, ch. 138, known as the "Penitentiary Act," which in sec. 23, for the first time, recognized and specifically reserved the right of the "person injured" to institute a civil action against the thief, either "before or after conviction," to recover the value of the thing stolen, and from 1809 to 1860 such was the law of Maryland.

The enactment of sec. 23 of this Act of 1809 evidences that the right to maintain a civil suit by the person injured was unknown to the common law of the State.

For fifty years succeeding the enactment of this law and until the year 1860 this right of action appears to have been a dead letter on the books; a critical examination of the Reports from 3 H. & J. to 17 Md. fails to disclose any suit founded on this statutory right of action. On the adoption of the Code of 1860 the Legislature repealed all other prior legislation not contained in the two volumes of public and local laws.

The distinguished lawyers who examined, arranged and codified the laws contained in the forty volumes of the law theretofore existing, selected the provisions of sec. 6 of ch. 138, Acts of 1809, and substantially incorporated it in the Code of 1860 as sec. 98 of Art. 30, in words following. to wit: "Every person convicted of the crime of simple larceny, to the value of five dollars and upwards, or as accessory thereto before the fact, shall restore the money, goods or thing taken, to the owner, or shall pay to him the full value thereof, and be sentenced to the penitentiary for not less than one year, nor more than fifteen years."

They altogether rejected the provisions of sec. 23 of said Act, and with such rejection the right of civil action, either before or after conviction, was repealed and passed out of existence as part of the law of the State.

The Act of 1882, ch. 84. repealed and re-enacted sec. 98 of Art. 30, Code of 1860, by providing an additional and alternative place of punishment, to wit: the House of Correction. And the law thus amended was incorporated in the Code of 1888 as sec. 156 of Art. 27, and the same was again incorporated, without substantial change, in the Code of 1904 as sec. 261, Art. 27, and constitutes the existing law of Maryland on the subject.

The effect of this law is to give a special statutory jurisdiction to the Criminal Courts of the State in all matters of restitution in larceny and in respect to the cause of action in this case, to the Criminal Court of Baltimore City; the restoration of the goods, or their value, being predicated on conviction and being part of the punishment prescribed, and said Court having exclusive jurisdiction of all felonies committed in said city. Indeed, in the practice of said criminal tribunals, the daily restoration by the Court after conviction to the prosecuting witness, of stolen goods, finds authority only in said statute.

A special jurisdiction so given by statute to the Criminal Courts would effectually operate to oust any concurrent jurisdiction at the common law, did such exist, and is exclusive. 12 *A. & E. Enc.,* "Exclusive jurisdictions" and cases in notes.

The defendant in this case had not been convicted at the time of the issuing of the writ.

Whether a person injured by a larceny is entitled to sue the person charged in a civil action is an initial question in this State, and it would appear that its decision must be governed by the existing laws of Maryland. There is no precedent in this State and decisions in other States are so affected by their respective constitutions, codes, forms and rules of judicial procedure as to result in conflicting conclusions of little value to the discussion in this appeal. Under the

affirmative law of Maryland no Court, civil or criminal, can exercise jurisdiction for recovery or restitution in such case as this, except after conviction.

The first objection to the motion to quash the writ is well taken and the Superior Court of Baltimore City being without jurisdiction at common law or by statute to entertain such action, and particularly before conviction, it was error to overrule the motion.

The second and third objections go to the right of the plaintiff to maintain an action of attachment, on the facts of the case as presented by the pleadings; and, admitting, for the argument only, that the plaintiff has a right of action at the common law against the defendant in a civil forum and further admitting that every plaintiff having such right, may be a plaintiff in attachment, it is contended that the pleadings do not disclose a case of attachment on original process for fraud.

Attachment is a special statutory remedy, in contravention of the common law, and available only in those cases express'y provided for in the statutes authorizing it. (*Hodge & McLane Law of Att.,* page 2, Note 1.) The jurisdiction of the Court is special and limited, distinct from its general jurisdiction, and it must appear affirmatively on the face of the proceedings or its acts will be *coram non judice* and void. (*Id.* 11.)

There is nothing in the statute authorizing the writ to issue to recover for money stolen, and the Court is without affirmative authority. It cannot acquire jurisdiction by implication or construction. This is an action on original process for fraud and certain things are requisite to maintain it, among which are the following, to wit: The action must be founded on an evidence of debt filed under affidavit for a liquidated sum originating *ex contractu* and the debtor must be chargeable with fraud in contracting the debt or obligation or by reason of subsequent acts or dealings with his property. To constitute proper parties they must occupy the re-

lation of creditor and debtor. *Hough and wife* v. *Kugler,* 36 Md. 194.

There can be no claim for unliquidated damages or for wrongs independent of contract except under the Acts of 1888, ch. 507 (Art. 9, sec. 44, C. P. G. L.), but such remedy is specially limited to two classes of debtors, to wit: non-resident and absconding debtors, to neither of which classes this defendant belongs.

Tested by these rules the affidavit, voucher and declaration here filed altogether fail to warrant the issuing of the writ.

It cannot be seriously contended that a larceny constitutes a debt or obligation *ex contractu* under the meaning of the statute (Art. 9, sec. 35, C. P. G. L.). If it can be considered as constituting a civil injury it must arise *ex delicto,* as a wrong independent of contract.

This is not a proceeding under the Acts of 1888. The plaintiff cannot elect to treat a larceny so specifically set out in the pleadings, as a debt, or be at liberty to enlarge the scope of the statute or to create another remedy by implication or construction.

There is no opportunity in attachment for a plaintiff to waive a tort and sue in assumpsit. And a theft cannot have a dual character or be done under any circumstances which could imply a contract.

There remains no room for argument on the bare facts as stated in the plaintiff's pleadings. They are utterly at variance with the letter and intention of the statute of 1862. There exists no *prima facie* evidence of a fraudulently contracted debt or obligation between the parties. The relation of creditor and debtor in no possible manner appears and it is respectfully submitted that the Court below was without jurisdiction on the pleadings to issue the writ, and the motion to quash ought to have been sustained.

And for the following reasons appearing on the face of the proceedings, to wit: The writ should be quashed because of a fatal variance between the affidavit, voucher and declaration.

In the affidavit the affiant makes oath that the defendant is *"bona fide* indebted to the plaintiff in the sum of $24,680 dollars over and above all discounts." There can be no question that the words signify a debt created in the course of business transactions and that character of debt is the common sense intention and meaning of the word "debt" as used in the statutes.

In the account the plaintiff sets out a wrong independent of contract and says that the money claimed was "stolen, taken away and appropriated to his own use" by the defendant, and that the items of the account "are not and are not intended to be a statement of the entire amount *stolen,"* etc.

The declaration joins two common assumpsit counts with a third count in trespass *d. b. a.* and is clearly demurrable. It is true the plaintiff charges an indebtedness in the wording of the third count, but calling it such does not alter the facts recited or their character as an act of trespass *vi et armis.*

The plaintiff's claim is not of a mixed character to be partly recovered in assumpsit by an amendment striking out the *ex delicto* count as in the case of *Boarman* v. *Patterson.* 1 G. 372.

He cannot make an affidavit to a *"bona fide debt above all discounts"* and file a voucher founded on larceny and attempt to straddle both charges in his declaration.

A variance between the affidavit and voucher is fatal to the writ. *Burke* v. *Tinsley,* 80 Md. 98; *Morris* v. *Graham,* 33 Md. 59.

The amount and voucher must show a *prima facie* debt, on their face, due by the defendant to the plaintiff. *Mears* v. *Anderson et al.,* 31 Md. 229; see illustrations cited in *Hodge & McLane, Att.,* sec. 56.

Such an action as the one under discussion is against public policy. It encourages the settlement of public wrongs by private suits and the compounding of felonies, for it is self-evident that a prosecuting witness who is made whole in his loss by the money of the thief would not be eager to

bring the offender to punishment. If before public trial and conviction the party injured can elect to make it his private suit, rich rogues would go unwhipped of justice; poor ones alone would populate the penitentiaries, and confessions of judgment would take the place of criminal convictions.

*Sylvan Hayes Lauchheimer,* Deputy City Solicitor (with whom was *Edgar Allan Poe,* City Solicitor, on the brief), for the appellee.

The term "indebted" in the Act of 1795, Ch. 56, regulating the suing out of attachments, is not to be construed in a technical or strict legal sense. *Wilson v. Wilson,* 8 Gill, 192; *Franklin v. Claflin,* 49 Md. 38. The legal acceptation of the word "debt" is not limited to the idea of a determinate sum of money due on an express agreement. The term applies to obligations imposed by law, or *quasi* contracts, as well as to obligations arising from contracts express or implied. *Morgan v. Stewart,* 44 Southern Reporter, 143. The matter must arise *ex contractu. Wilson v. Wilson,* 8 Gill, 195.

This Court has, therefore, held that the term "indebted" is not to be construed technically but broadly, in order to effectuate the obvious intention, hence, were there any doubt (it will be shown later that there is none), the Court would have no hesitancy in construing the word "debt," as used in section 36 of Article 9 of the Code of Public General Laws, to include the amount stolen by the appellee from the appellant. This language is used because this case is being tried upon the pleadings, and the pleadings charge that the appellant has stolen the money. To entitle a party to the remedy of attachmnt the claim must arise *ex contractu,* must not be in the nature of unliquidated damages and must be such as the plaintiff can aver by affidavit to be true. *Hough v. Kugler,* 36 Md. 194.

The true test of the applicability of the statute to a claim for damages is whether the claim can be sworn to. *Orient Mutual Ins. Co. v. Andrews,* 66 Md. 374; *Williams v. Jones,* 38 Md. 565.

In *Moneyweight Scale Co.* v. *McCormick,* 109 Md. 170, 183, this Court used the following language: "Moreover a party has a right to recover, as a debt, money obtained from him by fraud or embezzlement."

Tested by these principles laid down by this Court, it is apparent, that the plaintiff had the right to institute this suit, as it arose *ex contractu,* and being certain, the plaintiff could swear to the amount of the claim, thereby satisfying all the requirements of the statute and the cases. The decisions of this Court are that the claim must arise *ex contractu,* but nowhere is it stated, in the statute or in the decisions, that the claim must be upon an express contract and that implied contracts are exempted from the operation of the law.

In *Nat. Bank* v. *Fonda,* 65 Mich. 535, the Court said: "It is not claimed that, where money has been held and appropriated wrongfully, assumpsit will not lie, but the claim is that the attachment law only refers to actual and direct contract relations and does not apply where the contract is made such by legal intendment only. It would not be going very far to hold that the appropriation of these monies now sued for was a violation of the defendant's contract of employment. Under our statutes there can be no embezzelment by a private person that does not get its definition from a violation of the duties of his employment, which is, between private persons, always a contract relation. A declaration setting out the employment and the duty of paying over moneys and a failure to do so would be a very plain case of suit directly on contract. The fact that the failure has been, in some cases, made criminal, does not destroy its contract relations. But it is sufficient to say that, when the statute gives the remedy in cases of express and implied contract, we have no authority to graft an exception on the statute and hold that there are differences in implied contracts, and that where an action of tort will lie the fact that assumpsit will also lie does not make the case one of contract. This distinction, if attempted, would lead to great confusion. In cases of bail-

ment there has always been a choice of actions between ac-
tions on the case and assumpsit, which is, itself, really an
action on the case. Case lies for breach of duty and assump-
sit for breach of promise. A duty certainly rises out of a
promise; and the law implies a promise out of most duties.
Whatever authorizes the implication of a promise authorizes
a suit in assumpsit for its breach. This is the essence of
the doctrine of implied assumpsit; and any further refine-
ment on this doctrine would lead to no good. There is no
such equity in favor of wrongdoers that exception should be
created in their favor. It is rather the duty of Courts to
hold them subject to process where the law, by fair construc-
tion, reaches them, and we think this case is within its exact
language."

"Where an action against a thief, to recover judgment for
stolen money, is brought, as and for money received upon an
implied promise, the tort is thereby waived and the action
will be regarded as one *ex contractu* in which an attachment
against the property of the defendant will lie." *Gould* v.
*Baker,* 12 Tex. Civ. Apps. 671, 672. See also *Lipscomb* v.
*Bank,* 66 Kansas, 246; *Garrott* v. *Jaffray,* 73 Ky. 419;
*Nevada Co.* v. *Farnsworth,* 89 Fed. R. 164.

"When a party undertakes any office, employment, trust,
or duty, he thereby, in contemplation of law, impliedly con-
tracts with those who employ him, to perform that with which
he is entrusted with integrity, diligence and skill, and if he
fails to do so it a breach of contract for which a party may
have his remedy, in most cases, by action of assumpsit as well
as by action on the case." *Railroad* v. *Peoples,* 31 Ohio St.
543.

"There are a few cases in which a party is permitted to
treat that which is fairly a tort as having created a contract
between himself and the wrongdoer and, waiving this right
of action for the tort, to pursue his remedy for the breach of
the supposed contract. No question is made of this doctrine
where, as a result of the tortious act, the defendant has come
into the possession of money belonging to the plaintiff. The

law will not permit him to deny an implied promise to pay this money to the party entitled." *Cooley on Torts,* 91, 93 (2nd Ed. 107). *Gould* v. *Baker,* 12 Tex. Civ. Aps. 670, 671.

An action of assumpsit lies for money stolen. *Moneyweight* v. *McCormick,* 109 Md. 170, 183; *Gould* v. *Baker,* 12 Tex. Civ. App. 669, 670; *Railroad* v. *Peoples,* 31 Ohio St. 543; *Beardslee* v. *Horton,* 3 Mich. 560; *Spencer* v. *Towles,* 18 Mich. 1; *Elwell* v. *Martin,* 32 Vermont, 220.

Wherever an action of assumpsit will lie attachment will properly lie. *Crane* v. *Lewis,* 4 La. An. 320, 321; *Railroad* v. *People,* 31 Ohio St. 542, 543; *S. C. V. Peat Fuel Co.* v. *Tuck,* 53 Calif. 305; *Elwell* v. *Martin,* 32 Vermont, 223; *Nevada Co.* v. *Farnsworth,* 89 Fed. 164, 165, 166; *Foote* v. *Foulke,* 55 N. Y. S. 617, 618, 620; *Grevell* v. *Whitman,* 65 N. Y. S. 974, 975; *Hanley* v. *Combs,* 87 Pac. Rep. 143, 144; *Morgan Co.* v. *Stewart,* 44 So. Rep. 138, 143, 144; *Hitson* v. *Hunt,* 101 S. W. 292, 293; *Garrott* v. *Jaffray,* 73 Ky. 413, 418, 419; *U. S.* v. *Graff,* 67 Barb. 304; *Meyer* v. *Brooks,* 44 Pac. Rep. 281; *Bauh* v. *Graf,* 101 Wisc. 27; *Railway Co.* v. *Glaves,* 67 Mass. 83; *Howe* v. *Clancey,* 53 Me. 130; *Shaw* v. *Coffin,* 58 Me. 254; *Mayo* v. *Disconto Geselschaft,* 211 Ill. 310; *Martin* v. *Gunnison,* 27 Ohio Circuit Ct. R. 113; *Cohen* v. *Lasky,* 102 Ga. 846; *Judge* v. *Curtis,* 72 Ark. 132; *Kneeland on Attachment,* sec. 85; *Drake on Attachment,* sec. 22; *Wade on Attachment,* secs. 12, 22.

It is not true that the action for money had and received can only be grounded on privity of contract. It is the proper action to recover money obtained by fraud or deceit. *Penn* v. *Flack,* 3 G. & J. 374; 1 *Poe on Pleading,* secs. 117, 121.

There is an implied contract to make compensation for money which it has no right to retain. *Central Transp. Co.* v. *Pullman Car Co.,* 139 U. S. 60.

The above authorities make it plain that an attachment will lie in a case similar to the present one, many decisions being specifically on the point and numerous other decisions

being to the effect that, wherever an action of assumpsit can be instituted, attachment will lie. By these authorities all of the contentions of the appellant are fully answered.

The remedy given by Code, Art. 27, sec. 261, is merely cumulative, and all other remedies, granted by law to an individual who has been robbed, continue. A party whose goods have been stolen is not required to wait for an order of the Criminal Court to secure restitution, but may have a writ of replevin issued or may take any other action which he may be advised will secure for him his property. Surely, if property has been stolen, the party from whom it has been taken could recover the property by any proper proceeding, in addition to that given by section 261 of Article 27, as, unless this were so, persons would be deprived of substantial rights.

If the contention of the appellant were correct, then, if property has been stolen, the thief has absconded, has not been apprehended and cannot be brought to trial, the said property, however, cannot be retaken by its rightful owner, even though its location be known, because he would have to await the conviction of a criminal, who cannot be brought to trial because he cannot be found. The statement of such a proposition makes it apparent that such a condition was never contemplated or intended by the Legislature.

The appellant contended below, that the consequence of the maintenance of this suit was to have a criminal issue tried in a civil Court. This case is to be tried upon the pleadings, and from the pleadings it appears that the property was stolen, and there is no question involved as to the right of a civil Court to dispose of a criminal case. The pleadings settle that in this case, but even if that were not so, this case would have to be heard according to the law, and the defendant would have an opportunity to disprove the allegations of the declaration. If, however, that were not true, the word "stolen" could be considered as surplusage and reliance can be had upon the misappropriation of the public funds.

The provisions of the 'common law which inhibit a person whose property has been taken from securing it from the wrongdoer, are not applicable to the American States. The doctrine of the English law that, for goods feloniously taken, no action lies against the felon before the institution of criminal proceedings against him, is not in force in this commonwealth. *Boston and Worcester Railroad Corporation* v. *Dana,* 67 Mass. 96-100; *Pettingill·* v. *Rideout,* 6 N. H. 454; *Cross* v. *Guthery,* 2 Root, 90; *Piscataqua Bank* v. *Turnley,* 1 Miles, 312; *Foster* v. *Commonwealth,* 8 W. N. S. 77; *Hepburn's Case,* 3 Bland, 114; *Allison* v. *Bank,* 6 Rand, 223; *Story* v. *Hammond,* 4 Ohio, 376; *Ballew* v. *Alexander,* 6 Humph. 433; *Blassingame* v. *Glaves,* 6 B. Monroe, 38.

In this country the common law doctrine of the suspension of civil remedy in case of felony has not been recognized. The reason usually assigned is that in this country the duty of prosecuting for public offenses is devolved upon a public officer chosen for that purpose, instead of being left, as in England, to the voluntary action of the party injured by the crime. The civil and criminal prosecutions may, therefore go on *pari passu,* or, if the latter is not commenced at all, the failure to seek public justice is no bar to the private remedy. *Cooley on Torts,* 152, 153, Third Ed.; *Plummer* v. *Webb,* 1 Ware, 69; *Pettingill* v. *Rideout,* 6 N. H. 454; *Boardman* v. *Gore,* 15 Mass. 331; *Hyatt* v. *Adams,* 16 Mich. 180; *Allison* v. *Bank of Virginia,* 6 Rand, 204; *Ballew* v. *Alexander,* 6 Humph. 433; *Foster* v. *Commonwealth.* 8 W. N. S. 77; *Blassingame* v. *Glaves,* 6 B. M. 38; *Williams* v. *Dickinson,* 28 Fla. 90; *Howell* v. *Augusta,* 77 Ga. 192; *Parker* v. *Lanier,* 82 Ga. 216.; *Gould* v. *Baker,* 12 Texas Civ App. 670.

PEARCE, J., delivered the opinion of the Court.

This appeal is from a judgment of the Superior Court of Baltimore City overruling a motion to quash an attachment on original process, instituted by the Mayor and City Council of Baltimore against William F. Downs. The affidavit

alleges that said William F. Downs is bona fide indebted unto the said Mayor and City Council in the sum of $24,680, over and above all discounts, and that the said Mayor and City Council has good reason to believe:

1st. That said Downs has assigned, disposed of, or concealed, or is about to assign, dispose of or conceal, his property, or some portion thereof, with intent to defraud his creditors.

2nd. That the said Wm. F. Downs frauduently contracted the debt or incurred the obligation aforesaid.

The account filed with said affidavit is as follows: "Baltimore, Md., April 3rd, 1909. William F. Downs is indebted unto the Mayor and City Council of Baltimore in the sum of $24,680 for money *stolen* by the said William F. Downs from the said Mayor and City Council of Baltimore, while the said William F. Downs was a clerk into the office of the Register of the Mayor and City Council of Baltimore, and acting as such in said office, and in the employment of the said Mayor and City Council of Baltimore, as such, which said $24,680 at the time of such theft as aforesaid by the said William F. Downs, was the property of the said Mayor and City Council of Baltimore, and which said property and money so stolen by the said William F. Downs as alleged, the said William F. Downs has taken away and appropriated to his own use; said sums of money having been stolen on the dates opposite the amounts as follows."

The several separate amounts so alleged to have been stolen, and the several dates on which the several amounts are alleged to have been stolen, are then set out, the aggregate amount of said several amounts being alleged to be $24,680, and said aggregate amount being stated in said account, not to be, nor intended to be taken as a statement of the entire amount so taken and stolen.

The declaration contains three counts for money payable by the defendant to the plaintiff:

1st. For money received by the defendant for the use of the plaintiff.

2nd. For money found to be due from the defendant to the plaintiff on accounts stated between them.

3rd. "For money stolen by the defendant from the plaintiff," repeating the exact language heretofore transcribed from the affidavit.

Certain property was attached, and the defendant moved to quash the writ assigning the following reasons:

1st. Because the Court was without jurisdiction in the premises.

2nd. Because it appeared from the proceedings that the relation of debtor and creditor never existed in respect to the money alleged to have been stolen.

3rd. Because it appeared from the proceedings that there was no contractual obligation due the plaintiff induced by the fraud of the defendant.

4th. For other reasons to be shown at the trial of the motion.

The second and third reasons are essentially the same, and each merely amplifies and makes specific the general ground of the first reason.

The fourth is the usual general reason alleged, to cover any unforeseen particular objection, but none such has been brought forward.

The grounds of objection may be reduced to two, and may be restated thus:

1st. That exclusive jurisdiction of all matters growing out of a larceny or embezzlement is under the law of this State vested in the Criminal Courts.

2nd. That if this contention be denied, there is still no jurisdiction under the attachment law in the civil Courts for want of any contractual relation between the parties in respect to the money alleged to have been stolen.

These questions have never arisen in Maryland, and we shall consider them therefore first upon principle, and then in the light of decisions elsewhere under statutes similar to our own.

In order to avoid confusion of mind as to the real question for determination, it must be remembered that *at this stage of the case,* it is wholly immaterial to inquire whether a larceny or embezzlement has in fact been committed but merely whether that charge, if sustained by proof at the proper time, is a charge of an indebtedness, *either express or implied,* which under our statute will warrant an attachment. The motion to quash the attachment is strictly analogous in its operation, to a demurrer in an ordinary suit, in that it admits for the purpose of the motion, all the facts alleged in the affidavit and account, while it challenges the jurisdiction of the Court upon such facts. The test of jurisdiction which is thus necessarily suggested, is this. If the facts thus alleged would sustain an action of assumpsit in the ordinary form, the attachment should lie, if they would not, the motion to quash should prevail, or, enlarging the verbal proposition, but not the legal principle involved, if an action of assumpsit could be maintained upon the facts stated, aside from an attachment, why should an attachment, as an original proceeding be rendered nugatory merely because accompanied by a proceeding *in personam,* such as would support a judgment, if there were no proceeding *in rem?*

This question is sought to be avoided by the able counsel for the appellant through the contention that under sec. 261 of Art. 27 of our Code of Public General Laws a special statutory jurisdiction is conferred upon the Criminal Courts of the State in all matters of restitution in larceny; "the restoration of the goods, or their value, being predicated on conviction, and being part of the punishment prescribed, and said Courts having exclusive jurisdiction of all felonies committed within the bounds of their authority." This contention is argued with ability but after careful consideration we cannot adopt it. It is inaccurate, we think, to say that the restoration of the property stolen is a part of the punishment prescribed. It is a part of the *judgment* of the Court directed to be entered, but not a part of the punishment prescribed, not a part of the *sentence* to be imposed. The lan-

guage of that section is: "Every person convicted of · the crime of simple larceny to the value of five dollars or upwards, shall restore the money, goods, or thing taken, to the owner, or shall pay him the full value thereof, *and be sentenced to the penitentiary* for not less than one year nor more than fifteen years;" and in practice the Courts observe this distinction, the approved and usual form of compliance with this section being as follows: "The judgment of the Court is that you restore to the owner the property stolen, or the full value thereof, and that *as a punishment for your offense,* you be confined, etc." The order for rest₋ration of the property must be regarded merely as declaratory of the *duty* of restoration, and as designed to effect an *immediate* restoration of any of the stolen property in the custody of the Court or of the State's Attorney without the necessity of recourse to a civil suit for its recovery. If the contention of the appellant should be accepted as correct, it would be in the power of every thief who had stolen a chattel, or a bond for the payment of money to bearer, or money, not impounded by the State's Attorney for use in evidence at the trial, to deliver it over to any other person, and thus effectually deprive the owner of all opportunity of reclaiming it. The larceny of property changes the *possession,* but does not divest the title. The title to property stolen is as readily established in a civil suit for its possession, as in a criminal prosecution for its larceny, and it cannot be supposed that the Legislature designed by the enactment of sec. 261 of Art. 27, to withold from the real owner, until the conviction of the thief, the common law remedies for the restoration of *possession* of property wrongfully taken from him, or the common law remedies for recovery of the *value* of propety or money so wrongfully taken. It is one thing to say, as our Declaration of Rights does say, that the inhabitants of Maryland are *entitled* to the common law of England, and another to say as the appellant contends, that the common law of England *must be enforced* in Maryland in all cases without regard to its applicability to our institutions, circumstances

or methods of procedure. Forfeitures and confiscations, as a part of the common law system of England have their place in England today, but they are alien to the spirit of our form of Government, and were declared by CHANCELLOR BLAND, in *Hepburn's Case,* 3 Bland, 114, to be "now entirely obsolete." Coming however to the specific contention of the appellant in this case it has been emphatically denied by so high authority as JUDGE COOLEY, who says in his work on *Torts,* 1st Ed., page 87 : "In this country the common law doctrine of the suspension of civil remedy in case of felony has not been recognized. The reason usually assigned is, that in this country the duty of prosecuting for public offenses is devolved upon a public officer chosen for the purpose, instead of being left as in England to the voluntary action of the party injured by crime. The civil and the criminal prosecution may therefore go on *pari passu,* or if the latter is not commenced at all, the failure to seek public justice is no bar to the private remedy." This text of JUDGE COOLEY's is sustained by numerous decisions among which is the case of *Boston & Worcester R. R. Corporation* v. *Dana,* 67 Mass. 83, in which the Court concisely states: "The doctrine of the English law, that for goods feloniously taken, no action lies against the felon before the *institution* of criminal proceedings against him, is not in force in this commonwealth." Reference to the brief of the appellees in this case will supply an array of cases to the same effect. It should be observed here that the *Massachusetts case* cited above, in speaking of the doctrine of the English law, does not base the right to a civil action against the felon, upon *conviction,* as contended here, but upon the *institution* of criminal proceedings against him, and the institution of such proceeding without conviction satisfies the reason assigned by JUDGE COOLEY, and generally conceded to be the true reason for the doctrine of the English law, and in this case the records of this Court disclose the fact that a criminal prosecution for the identical larceny out of which this civil action arises, was instituted and is now pending in the Criminal Court of Baltimore

City, having jurisdiction over the prosecution of the crime charged.

Therefore upon any rational application of the doctrine of the English law, there is no room for the application of the contention of the appellant above mentioned.

It remains however to consider whether this case falls within our statute providing for attachments upon origina. proceedings.

This is contained in section 36 of Art. 9, which provides in brief that every person who may be a plaintiff in any action or proceeding, before any judicial tribunal in this State, may proceed by attachment in the following cases, upon the conditions and in the manner herein provided:

'The first condition is that the plaintiff or someone in his behalf shall make affidavit before the clerk of the Court from which the attachment shall issue, * * * stating that the defendant named in the writ of attachment is *bona fide* indebted to the plaintiff in the sum therein stated, over and above all discounts; and that the plaintiff knows, or has good reason to believe, among other things, first, that the defendant has assigned, disposed of, or concealed, or is about to assign, dispose of or conceal, his property, or some portion thereof, with intent to defraud his creditors; and second, that the said defendant fraudulently contracted the debt or incurred the obligation aforesaid. It is the required affidavit which gives jurisdiction to the Court to hear a motion to quash. That affidavit has been made, and jurisdiction has therefore attached, if the averments of the affidavit, as construed by our own decisions, comply with the requirements of our statute.

The foundation of such an attachment is the averment of an existing indebtedness, so that our inquiry must be what circumstances or facts will warrant an averment or affidavit of indebtedness. If one buys goods of another, intending to pay for them on the terms stipulated, but failing to do so, he may if a non-resident, or an absconder, be proceeded against by attachment. If, being a resident, he buys goods, not in-

tending to pay for them, or if after his purchase, he assigns or disposes of his property or is about to do so, with the intent to defraud his creditors, he may be proceeded against in like manner. Why then, if by theft, he acquires possession of the goods or money of another, with the intent to defraud such other person, may he not be proceeded against by attachment? Is he any the less, in law or in morals, a debtor, because he has acquired possession of another's goods by violence or trespass, than if he had acquired possession by a contract unmixed with fraud, at the time the contract was made, or by a contract obtained by fraud or artifice on his part? We do not think so; the highest Court in this State has long ago decided that this term *"indebted,"* as used in the attachment acts is not to be construed in a technical or strict legal sense. *Wilson* v. *Wilson,* 8 Gill, 192; *Franklin* v. *Claftin,* 49 Md. 38. It should be conceded that the claim must arise *ex contractu,* but this contract may be implied, and need not be express. "It must be such as the plaintiff can aver by affidavit to be true." *Hough* v. *Kugler,* 36 Md. 194. The true test of the applicability of the statute is whether the claim can be sworn to. *Orient Mutual Ins. Co.* v. *Andrews,* 66 Md. 374; *Continental Ins. Co.* v. *Reynolds,* 107 Md. 106. In *Moneyweight Co.* v. *McCormick,* 109 Md. 183, JUDGE THOMAS said: "A party has a right to recover as a debt money obtained from him by fraud or embezzlement."

In *National Bank* v. *Fonda,* 65 Mich. 533, the affidavit was almost the same as in this case. There as here, it was contended that the attachment law only refers to actual and direct contract relations, and does not apply where the contract is made such by legal intendment only. The Court however said: "It would not be going very far to hold that the appropriation of these moneys now sued for was a violation of the defendant's contract of employment * * * the duties of an employment always arise out of a contract relation. A declaration setting out the employment and the duty of paying over (or accounting for moneys) and a failure to do so would be a very plain case of suit directly on con-

tract.   The fact that the failure has in some cases, been made criminal, does not destroy its contract relation * * *. We have no authority to graft an exception on the statute, and hold that there are differences in implied contracts, and that where an action of tort will lie the fact that assumpsit will also lie does not make the case one of contract. * * * In cases of bailment there has always been a choice of actions between actions on the case and assumpsit, which is itself, really an action on the case. * * * There is no such equity in favor of wrongdoers that exceptions should be created in their favor.   It is rather the duty of the Courts to hold them subject to process where the law by fair construction, reaches them."

So in *Garrott* v. *Jaffray,* 73 Ky. 419, the Court said: "The provisions of the Code make no distinction between express and implied contracts.   If made by the parties it is express; and if created by legal presumption upon a given state of facts, it is an implied contract; and in either case an attachment may be issued and sustained."

And in *Central Tranportation Co.* v. *Pullman Car. Co.,* 139 U. S. 60, it is said: "There is an implied contract to make compensation for money which it has no right to retain."

We do not think it necessary to cite further authorities, nor to prolong this opinion by further reasoning of our own.

The briefs in the case on both sides are full and interesting, and reference may be had to them for the decisions on the subject.   These are not entirely uniform, but both the current and weight of authority sustain the conclusion we have reached.

For the reasons stated the judgment will be affirmed.

> *Judgment affirmed with costs to the appellee above and below.*