LENEHAN ET AL. *v.* NICHOLSON ET AL.

[No. 32, September Term, 1957.]

*Decided October 28, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Thomas S. Jackson,* with whom was *Herman Tocker* on the brief, for the appellants.

*Albert E. Brault,* with whom was *Laurence T. Scott* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by the plaintiffs, appellants, from a judgment rendered as the result of a directed verdict for the defendants, appellees, granted by the trial judge in a trial before a jury.

The facts, for the purposes of this case, are substantially as follows: James J. Lenehan, Jr., (Jimmy), six years of age, and his friend, Tommy Murphy, age 7, on October 9, 1955, were playing near a culvert on the east side of Norbeck Road, Route 28, near Rockville, Maryland. The concrete road at that point was twenty feet wide from shoulder to shoulder, a two lane highway with a solid white line down its center. The speed limit was forty miles per hour. Mr. Charles F. Nicholson, one of the defendants, was operating his automobile on that road about 5 P. M. in daylight in a southerly direction, accompanied by his wife, the other defendant. The weather was clear and dry and the visibility from the curve in the road was about 350 feet. Along the east side and off the road was a rubble of broken concrete on which it was difficult to walk. Behind that, at a distance of 10 feet, was a hedge. Jimmy ran across the road about 110 feet south of the culvert and was struck by the Nicholson car. At the end of the plaintiffs' case the trial judge instructed a verdict for the Nicholsons, defendants, and from a judgment for costs on that verdict the plaintiffs appeal.

Jimmy said that on Sunday, October 9, 1955, he and Tommy Murphy and Tommy's three brothers were hunting for frogs in a culvert. He and Tommy crossed Norbeck Road from west to east and went down an incline to the culvert on that side. He later recrossed the road and when he was half way across, the car hit him on the legs. He did not see the car before he started across nor did he see or hear it before he was struck. On cross examination he said he fell on the

side of the road where the automobile was and it struck his legs.

Tommy Murphy said that he was seven years of age and was playing with his three brothers and Jimmy down near the culvert on the west side of Norbeck Road trying to catch frogs. They saw a mouse run into the culvert and Jimmy said he was going to cross the road and Tommy said: "I will, too." His three brothers told him not to cross but he and Jimmy did so. They went down the hill, looked into the culvert for the mouse, but did not see it. They then climbed up the hill. They were not behind the hedge at any time. At one point Tommy said that he, Tommy, went up the side of the road and then crossed. He did not know where Jimmy was. At another point he said Jimmy was still at the culvert. He further said he was on the west side of the road, a short distance south of the culvert, when he turned and looked and saw Jimmy standing about the same distance from the culvert on the east side of the road. At another point he said that he, Tommy, had not crossed the road and was in the middle of it when Jimmy was struck. Later he said he turned around to make sure Jimmy was crossing. At another point, when asked whether he turned around to make sure Jimmy was crossing, he replied: "No." At one time, when asked where he saw Jimmy, he said that Jimmy was along the side of the road. When asked whether Jimmy was standing on the edge of the road, he said: "I don't know." At another point Tommy said that he, Tommy, was almost across the road when he heard the squeaks of the car, turned around and saw the car hit Jimmy. He later said he did not actually see the car strike Jimmy. When asked when he turned and whether he saw Jimmy moving or standing still, he, Tommy, said he did not know. He also said that the first time he knew Jimmy was hit by an automobile was when he heard the squeaks. He then turned and saw Jimmy skidding across the road and the automobile was skidding across to the right side of the road.

Mr. Charles Nicholson, defendant, testified that he was driving his Buick sedan on October 9, 1955, along Route 28, near Rockville, about twenty-five miles an hour, at approxi-

mately five o'clock in the afternoon. It was still daylight and the weather was dry and clear. He had had nothing to drink. He came down around a winding hill and was approaching another hill going up grade. The road at that point was straight for several hundred yards up the hill. When he first saw Jimmy, he was running fast straight across the road from the concrete shoulder, was half way across to the other side, 10 or 15 feet across the road running toward his car. He kept coming, kept running and the left headlight of the automobile hit him in the head. The instant he saw Jimmy he applied all his brakes and it seemed to him that he stopped immediately or within 1 foot after the impact. When he stopped the car, one wheel was off the right shoulder of the road. The only damage to the car was at the left headlight, which was repaired at a cost of $3.00.

Mrs. Nicholson testified that she saw no children on the road. She did not see Jimmy until he was practically half way across the road. He was running very fast right toward the car and he hit the front edge of the automobile on the right side of the road. The car stopped within a foot after Jimmy was struck. When it stopped the right front wheel was then off the shoulder of the road.

Marion S. Nicewarner, of the Montgomery County Police Department, testified that he arrived at the scene shortly after the accident. Mr. Nicholson told him he did not see Jimmy when he ran out. When he did see him he came out of the hedge right across the road. He applied his brakes and cut to the right to keep from hitting Jimmy. He struck him with the left front of his car. Officer Nicewarner said he noticed a smell like alcoholic beverage on Mr. Nicholson's breath. He appeared to be sober and normal in every sense of the word. At the argument in this Court plaintiffs did not contend that Mr. Nicholson was at all under the influence of liquor. The skid marks from the right front wheel of the automobile, from beginning to end, extended 52 feet and within 4 feet of the bank on the right side of the road. The rubble along the left side of the road was off the road, which was on an upgrade from the culvert. Mr. Nicholson told him he was not going fast "at all".

Code, 1951, Article 66½, Section 174 (a), provides in part that no person shall operate a motor vehicle "over any public highway of the State recklessly or at a rate of speed greater than is reasonable and proper, having regard to the width, traffic and use of the highway, or so as to endanger the property and life or limb of any person * * *."

The appellants rely strongly on the case of *Miller v. Graff,* 196 Md. 609, 78 A. 2d 220. In that case there was testimony that a taxicab was traveling down a city street at a speed of about 45 miles per hour, in a 25 mile zone, or almost twice as fast as the law allowed. It was said: "This case is not one where a person suddenly leaves a sidewalk or other place of safety and darts directly into the path of a car. The child proceeded across the street in plain view of the driver, and the question is whether he could have avoided the accident if he had been driving at not more than 25 miles per hour, as the law allows." There, the taxicab was moving so fast that the child was hurled into the air and when it stopped the child's head was underneath the rear end of the cab. Also, there was testimony that a pedestrian saw the child's peril before the driver saw it, and tried to prevent the accident by waving to the driver to stop. It was there said: "As we said in *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127, the public highways are for the use of everybody, and no one is barred from their use by age or physical condition. If a child darts out in front of an approaching automobile when the driver is going at a reasonable rate of speed and obeying the rules of the road, so that even with the exercise of due diligence he is unable to avoid running into the child, he is not liable for any injuries the child may sustain; but if the driver is going at an excessive speed, he cannot escape liability by saying that the child ran in front of the car so suddenly that the accident was unavoidable. *Henkelmann v. Metropolitan Life Insurance Co.,* 180 Md. 591, 596, 26 A. 2d 418." *Cocco v. Lissau,* 202 Md. 196, 202, 95 A. 2d 857.

Of course, if in the case there is any evidence competent, pertinent and coming from a legal source legally sufficient to prove plaintiffs' case, the motion for directed verdict should not be granted. In examining the facts we should consider

them in a light most favorable to the plaintiffs. The testimony of Jimmy, of course, was of no assistance in deciding the case, and that of Tommy was so contradictory, vague and indefinite that it had no probative force, and a jury cannot be allowed to speculate about it or to select one or another contradictory statement on which to pass a verdict. *Olney v. Carmichael,* 202 Md. 226, 232, 96 A. 2d 37; *West v. Belle Isle Cab Co.,* 203 Md. 244, 254, 100 A. 2d 17; *Chackness v. Board of Education,* 209 Md. 88, 94-95, 120 A. 2d 392. The burden is on the plaintiffs to show some act of negligence on the part of the defendants.

The only remaining evidence on the question before us is that of Officer Nicewarner and of the defendants. Officer Nicewarner testified that Mr. Nicholson told him the first time he saw Jimmy was when he came out of the hedge right across the road. He applied his brakes and cut to the right to keep from hitting Jimmy. Mr. Nicholson told him he was not going at all fast. The skid marks extended 52 feet and within 4 feet of the bank on the right-hand side of the road. According to the table issued by the Commissioner of Motor Vehicles the stopping distance of a car, as in the instant case, moving at 25 miles an hour, is 61 feet. The skid marks of 52 feet in no way contradict Mr. Nicholson's testimony that he was driving at 25 miles per hour. There is no evidence except that he was driving on the right-hand side of the road at a very reasonable rate of speed. When he saw Jimmy he was running straight across the road ten or fifteen feet from him and directly toward his car.

Jimmy was not in the road when Mr. Nicholson first saw him as in *Stafford v. Zake,* 179 Md. 460, 20 A. 2d 144, relied on by the plaintiffs. Nor was he speeding or operating his car in an unreasonable and improper manner as in *Miller v. Graff, supra,* heavily relied on by the plaintiffs. From all the evidence the driver was exercising reasonable care when Jimmy crossed the road directly in front of him. He was doing what any reasonable person would have done under the circumstances. Compare *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127. To submit this case to a jury would allow them merely to speculate. There was no

evidence of any act of negligence on the part of the defendants. *Shafer v. State,* 171 Md. 506, 516, 189 A. 273. The trial judge was correct in directing a verdict for the defendants.

The plaintiffs contend that, because in an opinion overruling the motion for a new trial, the trial judge stated that there was no credible evidence to show at what point of time Tommy or Jimmy appeared upon the highway, the court weighed the evidence which was a jury function. The question of the granting of a new trial is not before us in this case.

*Judgment affirmed, with costs.*