## PLITT *v.* GREENBERG

[No. 192, September Term, 1965.]

*Decided April 28, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*Eugene Hettleman* for appellant.

*Leslie M. Pittler,* with whom were *Sullivan & Pittler, Robert L. Sullivan, Jr.* and *William J. Pittler* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This case involves the question of whether the plaintiff has met his burden of proof in establishing a *prima facie* case of unjust enrichment. On April 23, 1960, the appellant, Clarence M. Plitt (Plitt), filed a declaration and election for a jury trial claiming damages in the amount of $38,333.34, which sum represented the proceeds of a check dated April 25, 1957, subsequently negotiated to the appellee, Theodore E. Greenberg (Greenberg). On November 9, 1964 Plitt amended his declaration and alleged a cause of action in debt, fraudulent misrepresentation and unjust enrichment. A jury trial was had and at the conclusion of the appellant's case, the appellee filed a motion for a directed verdict. An appeal was taken from a judgment for the defendant and for costs entered after the granting of that motion.

Plitt had been represented for several years in various finan-

cial transactions by Melvin R. Blacker (Blacker). Prior to 1958 Blacker, a lawyer, was a member of the Baltimore City Bar. On April 25, 1957 Plitt issued a check in the sum of $38,333.34 to M. R. Blacker and D. G. Blacker (his wife). Blacker endorsed the check and the endorsement of his wife was forged. Plitt, ignorant of the forgery, then endorsed the check under the following special endorsement:

> "Pay to the order of the First National Bank of Balto. for wire transfer to the Central National Bank Richmond, Va. for credit Theodore E. Greenberg."

Plitt testified that he had been led to believe that he was making a loan to Greenberg as well as to the Blackers, so that Plitt could look to Greenberg and the Blackers for repayment. Plitt had never met Greenberg, but Plitt had had several financial contacts with him in the past.

As security for the loan, Plitt received a forty-five thousand dollar note from Alsage Realty Corporation payable to the Blackers. Plitt was to hold this note as collateral until Blacker could receive replacement collateral from Greenberg in Richmond. Alsage Realty was a paper corporation with no assets; and no collateral or other security was ever received from Greenberg.

On previous occasions Blacker had given Plitt notes purported to have been from Greenberg. Many of them were forgeries. Blacker was subsequently disbarred, criminally prosecuted, convicted and imprisoned as a result of the various illegal financial machinations which he had carried on. The Blackers are now divorced.

On October 3, 1961, the Blackers were adjudged bankrupts in the United States District Court for the Eastern District of Virginia; and Plitt, unable to obtain repayment of the $38,333.34 from them, proceeded against Greenberg.

In addition to Plitt himself, Greenberg was the only other witness called on behalf of the appellant. Greenberg acknowledged receipt of the $38,333.34 into his checking account, but he stated that he thought the money had come from Blacker. Greenberg testified that Blacker had been his brother-in-law and that in the past he had made several loans to Blacker, aggregating some two hundred thousand dollars.

It is Greenberg's contention that on April 15, 1957 Blacker had represented to him that he, Blacker, wished to make an investment but did not want his name to appear in connection with the transaction. In order to accomplish this result, Blacker gave Greenberg a personal check dated April 17, 1957 in the amount of $38,333.34 which was deposited to Greenberg's account in the Central National Bank of Richmond, Virginia. Blacker's check was returned for insufficient funds. Blacker promised Greenberg that he would wire money to make the check good. On April 25, 1957 Greenberg received the proceeds of Plitt's check for $38,333.34 into his account. Greenberg testified that he had given Blacker an equal amount for the $38,333.34 which he received, that he had no knowledge the money came from Plitt, and he thought that he had been dealing exclusively with Blacker.

There is no evidence that Greenberg knew that the funds which were wired to his account from Blacker originally came from Plitt. There are no grounds for an action of fraudulent conversion against Greenberg. Plitt relies on Code (1957) Art. 27, §145 which provides:

> "When any person shall be convicted of any statutory felony or misdemeanor, for the false or fraudulent obtention or embezzlement, secreting or making way with goods, chattels, valuable effects, money or securities, the court before whom any such conviction shall be had may award restitution to the real owner thereof; provided, however, that no bona fide holder thereof shall be obliged to surrender up the same."

The provisions of §145 are clearly inapplicable to this case if for no other reason than that criminal proceedings against Blacker involving Plitt's check were never instituted. *Rasin v. State*, 153 Md. 431, 138 Atl. 338 (1927) ; *Downs v. Baltimore*, 111 Md. 674, 76 Atl. 861 (1910).

Plitt, however, does possess a colorable cause of action grounded on a theory of unjust enrichment or restitution. Although Greenberg may not have known that he had received the proceeds of Plitt's check into his account, and no express contract for debt existed between Plitt and Greenberg, the law implies a debt "whenever the defendant has obtained posses-

sion of money which, in equity and good conscience, he ought not to be allowed to retain." *State, use of Employment Security Board v. Rucker,* 211 Md. 153, 158, 126 A. 2d 846 (1956). According to the *Restatement, Restitution* §123:

> "A person who, non-tortiously and without notice that another has the beneficial ownership of it, acquires property which it would have been wrongful for him to acquire with notice of the facts and of which he is not a purchaser for value is, upon discovery of the facts, under a duty to account to the other for the direct product of the subject matter and the value of the use to him, if any * * *."

In an action for unjust enrichment the burden is on the plaintiff to establish that the defendant holds plaintiff's money and that it would be unconscionable for him to retain it. *Howard v. United States,* 125 F. 2d 986 (5th Cir. 1942); *American Newspaper, Inc. v. United States,* 20 F. Supp. 385 (D. S. D. N. Y. 1937); *Eatwell v. Beck,* 41 Cal. 2d 128, 257 P. 2d 643 (1953); *Messner v. Union County,* 34 N. J. 233, 167 A. 2d 897 (1961); *First National Bank at Cody v. Fay,* 80 Wyo. 245, 341 P. 2d 79 (1959). "It is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability, if, in equity and good conscience, he is not entitled to hold it against the true owner." *Empire Oil Co. v. Lynch,* 106 Ga. App. 42, 126 S. E. 2d 478, 479 (1962). See also *Peoples State Bank v. Caterpillar Tractor Co.,* 213 Ind. 235, 12 N. E. 2d 123 (1938); *Spengeman v. Palestine Building Assoc. of Hudson Co.,* 60 N. J. Law 357, 37 Atl. 723 (1897); *Brubaker v. County of Berks,* 381 Pa. 157, 112 A. 2d 620 (1955); *Fain v. Neal,* 97 Ga. App. 497, 103 S. E. 2d 437 (1958).

It has been held that a plaintiff could recover money from even an innocent transferee who was without knowledge that he possessed the plaintiff's money. *In re Brereton's Estate,* 388 Pa. 206, 130 A. 2d 453 (1957); *Restatement, supra.* However, if a transferee came into possession of a plaintiff's money in good faith after paying a good and valuable consideration for it, then the plaintiff could not prevail and recover back the funds in that transferee's possession. *Ohio Casualty Ins. Co.*

*v. Smith,* 297 F. 2d 265 (7th Cir. 1962) ; *National City Bank v. Continental Natl. Bank & Trust Co.,* 83 F. 2d 134 (10th Cir. 1936) ; *Evangeline Iron Works v. Lyons,* 233 La. 307, 96 So. 2d 578 (1957) ; *American Express Co. v. Anadarko Bank & Trust Co.,* 179 Okl. 606, 67 P. 2d 55 (1937).

In order to make out a case of unjust enrichment, the burden rested upon Plitt to prove that the proceeds of his check, which were deposited into Greenberg's account, were received without the payment of valuable consideration from Greenberg to Blacker. See *Bank of Marshall County v. Boyd,* 308 Ky. 742, 215 S. W. 2d 850 (1958) ; *El Kouri v. Toma,* 200 Okl. 354, 194 P. 2d 872 (1948).

Greenberg's unequivocal testimony was to the effect that he had paid Blacker in exchange for the $38,333.34 which had come into his account. Greenberg's bank statement from the Central National Bank of Richmond, Virginia for the month of April, 1957, the critical period in this case, was introduced into evidence at the trial and is set out in this opinion as follows:

| Checks listed in order of payment, read across | | | Deposits | Date | Balance |
|---|---|---|---|---|---|
| | | | Balance brought forward | Apr. 1, '57— | 1,405.74 |
| | | | 392.85 | Apr. 3 '57 | 1,798.59 |
| 25.00 | 27.47 | | | Apr. 5 '57 | 1,746.12 |
| 11.61 | 103.00 | | | Apr. 8 '57 | 1,631.51 |
| | | | 16,200.00 | Apr. 9 '57 | 17,831.51 |
| 16,200.00 | | | | Apr. 10 '57 | 1,631.51 |
| 29.68 | | | | Apr. 11 '57 | 1,601.83 |
| 26.68 | 5.30 | | | Apr. 12 '57 | 1,569.85 |
| 6.00 | 156.40 | 30.83 | 936.93 | Apr. 15 '57 | 2,313.55 |
| 225.00 | 10.00 | | | Apr. 17 '57 | 2,078.55 |
| 10.00 | | | | Apr. 18 '57 | 2,068.55 |
| 5,333.34 | | | 38,333.34 | Apr. 19 '57 | 35,068.55 |
| 30,000.00 | | | | Apr. 22 '57 | 5,068.55 |
| | | | 5,333.34 | Apr. 23 '57 | 10,401.89 |
| 200.00 | 50.00 | | | Apr. 24 '57 | 10,151.89 |
| 38,335.60 | 3.96 | | 38,333.34 | Apr. 25 '57 | 10,145.67 |
| 5,335.60 LS | | | | Apr. 26 '57 | 4,810.07 |
| 23,000.00 | 2.23 | | 13,819.00 | Apr. 29 '57 | 4,373.16 OD |
| | | | 4,980.00 | Apr. 30 '57 | 606.84 |

Greenberg testified that he had given Blacker a check for $38,333.34 in exchange for the check from Blacker. Blacker's check is represented on the Greenberg bank statement by a deposit in the amount of $38,333.34 dated April 19th. Greenberg maintained that his check to Blacker cleared the Central National Bank on April 25th as evidenced by a debit for $38,335.60 appearing on his bank statement for that date. Greenberg had been requested to produce that check, but he has been unable to do so. It is clear, moreover, from the bank statement and from a letter of the bank addressed to Greenberg and introduced into evidence at the trial, that the debit of $38,335.60 dated April 25th does not represent the passage of a check through the Greenberg account, but was a charge against Greenberg's account because of the credit of the April 19th check for $38,333.34 which had been refused payment at the payor's (Blacker's) bank. When the proceeds of Plitt's check were wired to Greenberg's account on April 25th, the additional credit of $38,333.34 was balanced by a corresponding debit of $38,335.60 which offset the credit of the April 19th check from Blacker which had been returned because of insufficient funds.

Greenberg went on to say that although it was his belief that he had paid Blacker by a single check, this may not have been the case, that it may have been that payment had been in the form of two checks and a sum in cash monies, i.e., two checks for $5,333.34 and $30,000.00 respectively and $3,000.00 in cash. Since the institution of this suit in 1961, Plitt had attempted through the use of discovery procedure to have Greenberg produce the checks and records which would show payment of the $38,333.34 to Blacker. Greenberg has been unable to produce any checks, check stubs or records other than two checks payable to Blacker for the sums of $5,333.34 and $16,200.00 respectively. Greenberg was unable to explain the loss of this evidence except to say that the checks and records may have been misplaced and that in May of 1957 he had given to his attorney all of the checks which were payable to Blacker since they were requested at that time by the State's Attorney in Baltimore in connection with Blacker's criminal prosecution.

At the conclusion of the plaintiff's case Greenberg made a motion for a directed verdict. This motion was granted. The

trial court reasoned that although Greenberg's testimony was somewhat contradictory and open to question as to its accuracy, nevertheless it was "perhaps the only evidence" Plitt could use. Greenberg's unequivocal assertion that he had paid Blacker in full in exchange for the $38,333.34 was "uncontradicted" and therefore "controlling as evidence in the case in the absence of testimony to the contrary." It was concluded that evidence of lack of payment did not arise "beyond the barest surmise or conjecture that the defendant, Greenberg, received monies that, indeed, belonged to Plitt under circumstances where he had not been himself subjected to obligations from Blacker of an equal or greater sum."

We are of the opinion that it was error to grant a directed verdict for the defendant in this case. Plitt had presented sufficient evidence of lack of payment to Blacker for the proceeds of Plitt's check received into Greenberg's account as would justify taking the case to the jury.

In testing the sufficiency of the evidence we will resolve all evidentiary conflicts in favor of the plaintiff and assume the truth of all the evidence and inferences that may "naturally and legitimately be deduced therefrom in favor of the plaintiff's right to recover." *Smith v. Bernfeld,* 226 Md. 400, 174 A. 2d 53 (1961); *Langville v. Glen Burnie Coach Lines, Inc.,* 233 Md. 181, 195 A. 2d 717 (1963). "Of course, the jury should consider only the evidence before it in deciding a particular question and should not be allowed to merely speculate. Where there is no evidence to support a jury's verdict on a particular question, that question should not be submitted to it." *Maszczenski v. Myers,* 212 Md. 346, 354, 129 A. 2d 109 (1957). A plaintiff has not met his burden if he presents merely a scintilla of evidence where the jury must resort to surmise and conjecture to declare his right to recover. *Hevell v. Baltimore Transit Co.,* 173 Md. 327, 196 Atl. 103 (1938); *State v. Hopkins,* 173 Md. 321, 196 Atl. 91 (1938); *Mangione v. Snead,* 173 Md. 33, 195 Atl. 329 (1937).

There must be a rational basis for adjudication, and a jury will not be permitted to infer from mere possibilities the existence of facts. *Shafer v. State, for use of Sundergill,* 171 Md. 506, 189 Atl. 273 (1937). However, this Court has always

maintained that if there be any legally relevant and competent evidence, *however slight,* from which a rational mind could infer a fact in issue, then a trial court has invaded the province of the jury by declaring a directed verdict. *Geschwendt v. Yoe,* 174 Md. 374, 381, 198 Atl. 720 (1938); *Hanrahan v. Baltimore,* 114 Md. 517, 535, 80 Atl. 312 (1911) and prior Maryland cases cited therein. Judge Horney, for the Court, in *Smack v. Jackson,* 238 Md. 35, 37, 207 A. 2d 511 (1965) stated the rule succinctly when he said: "[A] party is not entitled to a directed verdict in his favor unless the facts and circumstances are such as to permit of only one inference with regard to the issue presented."

Plitt called on Greenberg to testify as an adverse party, and Greenberg stated unequivocally that he had given his check, or checks and cash in exchange for the $38,333.34. Code (1957) Art. 35, §9 specifically provides that an adverse party may be called to testify and then subsequently be interrogated and impeached. Plitt contradicted Greenberg's testimony to the effect that payment of the $38,333.34 had been accomplished by one check. Greenberg's alternative story that he had paid Blacker with two checks and a sum in cash was not specifically contradicted (indeed, under the circumstances it could not have been specifically contradicted).

Greenberg's bank statement for the month of April, 1957 was in evidence before the jury and is set out in full, *supra,* in this opinion. A study of that statement reveals that Greenberg drew no single check on his account during April of 1957 in the amount of $38,333.34. There is, moreover, evidence in this case to the effect that Greenberg had numerous financial dealings with Blacker in the past.

At the trial Greenberg presented only two checks made out to Blacker during the month of April, 1957. One check for $16,200.00 was paid by Greenberg's bank on April 10th. There appears on Greenberg's bank statement a deposit of $16,200.00 dated April 9th. This deposit is unexplained, and it could be reasonably inferred that the deposit and charge represent an exchange of monies with Blacker. Another check dated April 15, 1957 and made out to Blacker in the amount of $5,333.34 cleared Greenberg's bank on April 19th. There is also a balanc-

ing deposit in exactly the same amount ($5,333.34) dated April 23rd; and it is a fair inference that his check was not any consideration for the money which is the subject of this suit, but was an exchange of monies in a wholly distinct transaction.

A charge for $30,000.00 dated April 22nd appears on the bank statement; however, Greenberg has failed to produce the check represented by this debit and it is a reasonable inference that the charge had nothing to do with Blacker. The reason for the debit of $5,335.60 dated April 25th is unexplained. The charge for $23,000.00 dated April 29th on Greenberg's bank statement was shown to represent a check paid to Strouse-Baer Company, Greenberg's family-held corporation.

There is no evidence, other than Greenberg's bare assertion, that he paid Blacker for the $38,333.34 by a single check. Although Greenberg claims that he might have paid Blacker by two checks and cash, a rational inference may be drawn from the bank statement that in fact no payment had been so made.

Even though Greenberg had testified as an adverse witness on Plitt's behalf, the jury was not bound to accept the truth of Greenberg's unequivocal assertion that he had paid full value to Blacker for the proceeds of Plitt's check. In *Lehmann v. Johnson,* 218 Md. 343, 349, 146 A. 2d 886 (1958) we said:

> "The general rule in this State is that if one party calls an adverse party as a witness, he is bound by his adversary's testimony, unless it is contradicted or discredited. See *Maszczenski v. Myers,* 212 Md. 346, 352, 129 A. 2d 109, and cases therein cited, construing Code (1957), Article 35, Section 9 (the cases prior to *Maszczenski* dealing with that Section as enacted by §4 of Chapter 109 of the Acts of 1864 as it stood prior to its amendment by Chapter 380 of the Acts of 1939), and *Proctor Electric Co. v. Zink,* 217 Md. 22, 32-35, 141 A. 2d 721. However, as is pointed out in the *Proctor Electric* case (217 Md. at 32, 33), the cases referred to 'are not to be interpreted as meaning that a party is bound by each and every statement made by an adverse witness called by him', and the 'testimony of a witness may be contradicted or discredited by circumstances as well as by statements of other wit-

nesses, and a jury is not bound to accept a witness' testimony as true if it contains improbabilities, or if there are reasonable grounds for concluding that it is erroneous.' "

See also *Harding v. Alpha Van Lines, Inc.,* 224 Md. 596, 168 A. 2d 893 (1961).

Greenberg's testimony was on the whole vague, indefinite and somewhat contradictory. He did not remember in what manner he paid Blacker, only that Blacker had been paid. Indeed, Greenberg was unable to state if he expressly remembered that the check made out to Blacker for $5,333.34 had been paid to him as partial consideration for Plitt's check which had been received into the Greenberg account. A basic inconsistency, furthermore, permeates Greenberg's testimony. Greenberg stated that the exchange of $38,333.34 was brought about at Blacker's request because Blacker wished to enter certain financial transactions without revealing his identity. If Greenberg were acting as a straw man for Blacker in financial dealings, then why would he repay the $38,333.34 which he received by giving Blacker a check or checks made out in Blacker's name?

The jury could quite properly have determined that Greenberg's testimony possessed little, if any, probative weight. *Proctor Electric Co. v. Zink,* 217 Md. 22, 33, 141 A. 2d 721 (1958). Cf. *Lenehan v. Nicholson,* 214 Md. 414, 135 A. 2d 447 (1957). They could have entirely disregarded Greenberg's claim that payment had been made. After discounting Greenberg's testimony, however, sufficient evidence would remain in this case to enable a jury reasonably to infer that Greenberg paid nothing for the proceeds of Plitt's check.

> *Judgment reversed and case remanded for a new trial, the costs to be paid by the appellee.*