WALTER S. SWAYNE *vs.* THE CONNECTICUT COMPANY.

. Third Judicial District, Bridgeport, October Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The trial court may direct a verdict when the jury as reasonable men, informed as to the law applicable to the facts in issue, could have reached no other conclusion on the evidence presented.

Upon the plaintiff rests the burden of proving the defendant's negligence and his own exercise of due care; to sustain the latter, he must show that he made such use of his faculties as an ordinarily prudent man would have made under similar circumstances.

Negligence is a proximate cause of an injury only when the sequence of events is unbroken by any new and intervening cause and when without it the injury would not have occurred; that is, it must be an efficient act of causation separated from its effect by no other act of causation.

The plaintiff while driving in the highway near a street-railway track was warned of the approach of a trolley-car in his rear when it was still several hundred feet away, but failed to turn aside, until the car was within sixty feet; then his wagon slued on the icy road and was struck. Upon motion the trial court directed a verdict for the defendant. *Held* that upon any view of the evidence the plaintiff had failed to make out a case, since he had not proved either the defendant's negligence as a proximate cause of the injury, or his own exercise of due care, and therefore a verdict for the defendant was properly directed.

Argued October 24th, 1912—decided January 15th, 1913.

ACTION to recover damages for injuries to the person and property of the plaintiff, alleged to have been caused by the defendant's negligence, brought to the Superior

Court in New Haven County and tried to the jury before *Gager, J.;* the trial court directed a verdict for the defendant and rendered judgment thereon, from which the plaintiff appealed. *No error.*

*Ward Church* and *Harrison Hewitt,* for the appellant (plaintiff).

*Harrison T. Sheldon,* for the appellee (defendant).

RORABACK, J. This action was brought to recover damages for injuries to the person of the plaintiff and to his horse and wagon. The horse was being driven by the plaintiff, and the damages are alleged to have been received as the result of a collision between the wagon of the plaintiff and a car of the defendant company.

The allegations of negligence are that the defendant's servants were operating the car at a too rapid rate of speed, and failed to stop the car so as to avoid running into the wagon of the plaintiff.

The question raised on the appeal is confined to the action of the trial court in directing the jury to render a verdict for the defendant, and in denying the plaintiff's motion to set it aside.

From the uncontradicted facts it appears that the defendant operated a double-track line of street railway through Main Street from New Haven to East Haven. On the night of January 8th, 1912, at about nine o'clock in the evening, the plaintiff was driving a horse attached to a covered milk wagon on Main Street, in an easterly direction, and when at a point east of Huntington Avenue he was struck by a car moving in an easterly direction along the defendant company's southerly track. Main Street is substantially forty-one feet in width, and in the middle are laid the defendant's

tracks, which are about fourteen feet in width, leaving
about thirteen and one half feet of traveled roadway on
each side of the tracks. The tracks are substantially
straight for some distance, and a car can be seen all the
way to the curve of Beacon Avenue, which is over six
hundred feet west of the point of the collision. No
streets cross Main Street from Beacon Avenue for a dis-
tance of two thousand feet or more to the east, and only
two open into it, one of which is Huntington Avenue.
Within this distance there are only two or three houses
on Main Street. Huntington Avenue is about five
hundred feet east from Beacon Avenue. Beacon
Avenue is at the top of Beacon Hill, and Main Street
descends easterly from Beacon Avenue at a grade of
from three and one fourth to three and one half per
cent. to the point where the plaintiff sustained his in-
juries. The night in question was dark and sleeting.
The highway was icy, and there were ruts. The defend-
ant's car was equipped with a big searchlight, which
was lighted. The car stopped at Huntington Avenue
to let off a passenger. The car was running in a coun-
try district with but a few houses, upon a straight road
with no intersecting roads.

The plaintiff's servant, John Shute, testified that he
was driving another wagon about a wagon's length in
front of the plaintiff; that he saw the headlight of the
car when it turned the corner at Beacon Avenue; that
he immediately called to the plaintiff warning him of
its approach, and the plaintiff waved back that he
understood. The plaintiff testified that when Shute
called to him he was driving rapidly along the road in
the wheel tracks in the snow about twelve to fourteen
inches south of the southerly rail; that when the car
was about sixty feet away from him he started to turn
to the right; but that his wagon unexpectedly slued
and brought his wheels nearer to the track, and that

before he could get out of the way the car struck his wagon.

The defendant offered testimony tending to prove that after the stop at Huntington Avenue was made, and when the car had proceeded two or three car lengths, the motorman discovered the plaintiff's team ahead on the west-bound track, and rang the gong and did everything possible to prevent an accident, and that the plaintiff turned south across the east-bound track, and was struck by the car. There was conflicting evidence as to whether the plaintiff in fact crossed the track in front of the car, and if the case turned upon this claim of the defendant there was evidence to have gone to the jury.

There is no doubt of the power of the trial court to direct a verdict upon the evidence presented in a case when the jury as reasonable men, informed as to the law governing the facts in issue, could not have reached any other conclusion than that embodied in the verdict directed. *Farrington* v. *Cheponis*, 84 Conn. 1, 4, 78 Atl. 652. Applying that rule to the present case, it is clear that the decision of the Superior Court was correct.

If the testimony of the plaintiff's witness Shute was true, it appears that the plaintiff was notified of the approach of the car when it was several hundred feet away. If that were true he did not turn away from the track at once, but, as appears by his own testimony, proceeded along until the car was about sixty feet away, when he attempted to turn; but in so doing his wagon slued, which brought it upon the track, and the rear end of it was struck by the car. The plaintiff took his chances and remained upon the track, or in close proximity to it, when he had ample time and opportunity to get out of the way of the car, which he knew was approaching. He made a mistake in his calculations because his wagon slued onto the track

when the car collided with it. From the corner of
Beacon Avenue down to the place of the accident the
street was practically straight, with nothing to obstruct
the view. The plaintiff, from the information received,
must have known of the approaching car, but did not
make any reasonable effort to avert the danger until
it was too late. The burden of proving the alleged
negligence of the defendant, and his own exercise of due
care, rested upon the plaintiff. *Brockett* v. *Fair Haven
& W. R. Co.*, 73 Conn. 428, 433, 47 Atl. 763; *Morris* v.
*Winchester Repeating Arms Co.*, 73 Conn. 680, 49 Atl.
180; *Fay* v. *Hartford & Springfield Street Ry. Co.*, 81
Conn. 330, 335, 71 Atl. 364. Upon the question of con-
tributory negligence, that burden could be sustained
only by showing that the plaintiff made such use of
his faculties and his senses as an ordinarily prudent man
would under such or similar circumstances. It is man-
ifest that no injury would have been sustained if the
plaintiff had been in the exercise of proper care. *Morse*
v. *Consolidated Ry. Co.*, 81 Conn. 395, 71 Atl. 553.

If, on the other hand, the testimony of Shute were
not credible, and we take the testimony of the plaintiff
that the car was within sixty feet of him when he was
notified by Shute and saw it and attempted to turn out,
there is no evidence upon which the jury could find
that the defendant was negligent as alleged. It was al-
leged in the complaint that the collision was caused by
the negligence of the employees of the defendant who
operated the car "at a too rapid a rate of speed." The
only testimony offered by the plaintiff which referred
directly to this allegation was that of the plaintiff him-
self, who stated that the car "was coming like a chain
of lightning down that hill, which they always do."
This evidence was not of any importance in deter-
mining the speed of the car when the collision actually
took place. The plaintiff did not see the car, but only

the searchlight coming directly toward him.  He had therefore no manner of judging of this speed.  "That hill," referred to in the statement, was Beacon Hill, several hundred feet away from the point where the collision actually occurred.  The expression "like a chain of lightning," was entitled to but little weight as a definite statement of the speed of the car.  *Foley* v. *Boston & Maine Railroad,* 193 Mass. 332, 335, 79 N. E. 765.

Four witnesses, testifying upon the speed of the car, concurred in saying that the car was stopped at Huntington Avenue to discharge a passenger; that it had just started and was running at a speed of eight or ten miles an hour when it struck the wagon.  There was conflicting testimony as to the distance the car ran after the accident.  The estimates as to the distance ranged from one to two car lengths to one estimate of five hundred to six hundred feet.  The evidence shows that the plaintiff and his wagon were not upon the defendant's track upon which the collision occurred, until after the car stopped at Huntington Avenue.  There was no evidence that the car could have been stopped in a shorter distance than in fact it was stopped, nor that it could have been stopped before it struck the wagon, after the motorman saw, or should have seen, the obstruction upon the track.  The motorman and three disinterested witnesses testified that the car stopped at Huntington Avenue, which is only two or three car lengths from the point where the collision occurred, and were not contradicted as to this fact. Had the jury upon the evidence found the defendant negligent in operating its car at too high a rate of speed at this place, the verdict would properly have been set aside.

But from the plaintiff's own testimony it appears that even if the car were going at too high a rate of

speed, that fact was not the proximate cause of the accident. He testified that before he saw the car he was driving along upon the right side of the road twelve or fourteen inches from the track, and that in trying to get farther away from the track, when he saw the car approaching and sixty feet away, he turned so quickly to the right that the wagon slued around toward the track, so that the corner of it was struck by the car. The speed of the car was not the proximate cause of the collision. It would have occurred however slowly the car was moving. "Negligence is only deemed contributory when it is a proximate cause of the injury. That only is a proximate cause of an event, juridically considered, which, in a natural sequence, unbroken by any new and intervening cause, produces that event, and without which that event would not have occurred. It must be an efficient act of causation separated from its effect by no other act of causation." *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888. At the place where the accident occurred there was ample room to drive along the roadway.

Upon any view of the evidence the plaintiff failed to make out a case, and a verdict for the defendant was properly directed.

There is no error.

In this opinion HALL, C. J., PRENTICE and THAYER, Js., concurred.

WHEELER, J. (dissenting). I have been unable to read the evidence as the opinion views it. The facts as there stated and the argument of the opinion, in my judgment show such a conflict as to have made this, under our rule, a plain case for the jury.

There were two theories of the accident before the jury. The plaintiff's theory: that he was driving, with

a lantern on the side of his wagon, on the highway on a dark and stormy night, in the wheel tracks of the traveled way, twelve to fourteen inches from the eastbound track of the defendant, when he was warned by Shute, the driver of the wagon just ahead of him, of the approach of an east-bound car from his rear, and turned and saw it near him, and then turned out as quickly as he could, but his rear wagon wheel slued, and the car hit the wheel, overturning the wagon and causing the injuries sued for. The ground of negligence alleged was the operation of the car by the defendant at a too rapid rate of speed, and its failure to stop the car and avoid running into the wagon.

The defendant's theory: that when its car got within two car lengths, or eighty feet, of the plaintiff's wagon, its motorman saw the wagon proceeding south on the west-bound track, and at once the driver began to turn directly across the east-bound track in front of the approaching car, so that, although the motorman, immediately on seeing the wagon, did all he could to stop the car, it hit the wagon after it had proceeded three car lengths, or one hundred and twenty feet, from the point where the motorman first saw the wagon.

If the defendant's theory were the only reasonable one to be drawn from the evidence, the plaintiff's own negligence was clear. But the trial judge did not direct the verdict on any such theory, nor did the defendant argue the case upon it, nor is the opinion written upon that theory. There were three eye-witnesses to the accident: the plaintiff, Swayne, the driver of the wagon ahead, Shute, both testifying in behalf of the plaintiff, and the motorman of the car, testifying in behalf of the defendant. Aside from the fact that there were two theories of the case upon each of which evidence was offered, making the issue between them one for the jury, the evidence shows that it would be unreasonable to

accept the motorman's theory of the accident. This was a rear-end collision.

The motorman says he gave no warning of the approach of his car until after he saw the wagon about eighty feet ahead. The night was dark and stormy. The car was equipped with air brakes, and a big searchlight of the kind used on suburban lines. The motorman testified it threw its rays only eighty feet, or two car lengths. If this evidence stood uncontradicted, we should know from common knowledge that such a light threw its rays a much greater distance, and that with a proper lookout the motorman would have seen the wagon at a much greater distance, and so have had the opportunity to have stopped the car before hitting the wagon. Shute testified that when he turned in his wagon he saw the car several hundred feet back. The motorman had a better opporunity to see the plaintiff's wagon, which had a light on it, than Shute to see the car. It was open to the jury to have believed Shute, and to have found that the motorman was not keeping a proper lookout. If the motorman's statement were found true, and he could not see the wagon until within eighty feet of it, it follows that he was operating at such speed that the car could not be stopped by the exercise of reasonable care on his part because the headlight did not disclose the wagon in time to have avoided hitting it. Such operation under such conditions was negligence. We said, by BALDWIN, C. J., in *Currie* v. *Consolidated Ry. Co.*, 81 Conn. 383, 386, 71 Atl. 356: "The owner of the car, in running it, is therefore governed by the same rules which apply to the management of any other vehicles. Being of greater size and weight than they commonly are, and capable of being moved at a very high rate of speed, the car must, at all times, be kept so well in hand as not to expose others to unreasonable hazard. *Laufer* v.

*Bridgeport Traction Co.,* 68 Conn. 475, 37 Atl. 379.
When running at night, it must be provided with such
means of illumination as may be requisite, in connection
with the light, if any, to be expected from other sources,
to enable the motorman to see far enough ahead to do
whatever ordinary care may demand in order to avoid
a rear-end collision with any other vehicle upon the
railway track."

The opinion holds that there was no evidence to have
gone to the jury of the speed of the car. Swayne, on his
direct examination, said the car was going "like a chain
of lightning." The opinion holds that this expression
was entitled to little weight as a definite statement
fixing the speed of the car. It was a colloquialism with
which our language is filled, conveying to the average
mind the information that the speaker was of opinion
the car was going very fast. On cross-examination this
witness perfectly explains this by saying the car was
going "too fast" for the motorman to observe the light
on the side of his wagon. Shute, also, testified the car
was going very fast. The motorman said the car was
travelling eight or ten miles an hour, and though doing
all he could after he saw the wagon, he did not stop
the car before hitting the wagon at a point one hundred
and twenty feet distant, but did stop it in one hundred
and sixty feet. Other witnesses placed the point of
collision farther away. As to the distance the car ran
after the collision, the witnesses differed from a car
length to five hundred feet. The car was a large double
truck car equipped with air-brakes in good condition.

From these circumstances the jury might have found
the car was running at a rapid rate of speed, and, under
the conditions, at an unreasonable rate of speed, and
had it not been so operated it could have been brought
to a stop in the distance between the point where the
motorman says he saw the wagon and the point of

collision. Much sooner could it have been stopped if the motorman could have seen the wagon when several hundred feet away. The jury might have relied on common knowledge, based on universal and daily experience, to have found that, a car equipped with an air-brake and travelling at the rate of eight or ten miles an hour can, by the exercise of reasonable care, be stopped in a much shorter distance than one hundred and twenty feet; a car so equipped and operated, which cannot be stopped in that distance, is being operated at a high rate of speed; a car so equipped and operated, which runs one or more hundred feet beyond the point of collision, must have been running at very high speed. The opinion holds that the accident "would have occurred however slowly the car was moving." As the wagon was travelling rapidly and could not have been overtaken by the car in passing from Huntington Avenue crossing—if as the opinion suggests the car stopped there—to the point of collision, a distance between one hundred and fifty and two hundred feet, unless the car had been proceeding at a dangerously high rate of speed, we think this statement was an oversight.

The speed of the car, and the failure to keep a reasonable lookout, may fairly have been found by the jury to have been contributing causes of the accident. The plaintiff testified that Shute waved to him and warned him of the car's approach, and he turned, looked back, saw the car some sixty feet away, and at once began turning from the railway track. The opinion says: "If, on the other hand, the testimony of Shute were not credible [that when he warned Swayne the car was several hundred feet away], and we take the testimony of the plaintiff that the car was within sixty feet of him when he was notified by Shute and saw it and attempted to turn out, there is no evidence upon which the jury could find that the defendant was negligent as alleged."

This conclusion accepts Swayne's testimony as the only evidence in the case. It ignores Shute's testimony that the car was several hundred feet away; the motorman's testimony that he saw the wagon when it was eighty feet away; the elements of the speed of the car; the distance the car ran after the wagon was seen and before the collision, and the distance it ran after the collision. No conclusion is permissible which does not weigh all of this testimony.

If the conclusion of non-negligence is not permissible, the opinion holds the conclusion of contributory negligence must be reached. "If the testimony of the plaintiff's witness Shute was true, it appears that the plaintiff was notified of the approach of the car when it was several hundred feet away. If that were true he did not turn away from the track at once. . . . The plaintiff took his chances and remained upon the track, or in close proximity to it, when he had ample time and opportunity to get out of the way of the car, which he knew was approaching. He made a mistake in his calculations because his wagon slued onto the track when the car collided with it."

I am unable to find any testimony which says, or from which an inference could reasonably be drawn, that the wagon slued "onto the track." The plaintiff's wagon was never on the railway track, but was hit by the overhang of the car while he was endeavoring to get out of danger.

This conclusion of the opinion accepts Swayne's estimate of the distance the car was away, and upon that alone concludes that the car could not have been stopped in that distance. It disregards both Swayne's and Shute's testimony that Swayne turned out at once on receiving Shute's warning. It likewise disregards the presumption of fact that the natural course for the traveller to have taken when warned of the approach

of the car from the rear was, at once, to have tried to escape. Shute testified that he turned, waved and warned Swayne of the car's approach, and his testimony thus proceeds: "Q. Where was the car then? How far back, could you tell? A. I couldn't just tell how far back. We were going all the while. Q. You say you turned out? A. I turned out and Mr. Swayne followed and turned right out from it. Q. Then what happened next, if anything? A. The next I heard was 'bang.'"

Swayne testified as follows: "Q. Now, what happened when you came to the top of Beacon Hill and going down? A. We were driving along pretty lively. We wanted to get home on account of such stormy weather. I was right in the wheel tracks [of the road]. Both teams were. On the right side. I had a lantern in the wagon that shone front and I could see my team and see John turn in the wagon ahead of me, and he hollered back, 'There comes a trolley,' and I looked around and I saw a light and I went to pull out of the way quick to give them more room, but it was so icy and slippery, you know, the wagon slued and he was coming like a chain of lightning down that hill, which they always do, and he struck the corner of the wagon."

Whether the plaintiff, upon notice from Shute, "went to pull out of the way quick," as he says, and as Shute says, "turned right out from it" (the railway track) or not, was for the jury to decide. If Swayne and Shute gave a variant account of the accident, it was for the jury to pass upon their statements. In fact, there was no substantial variance in the account of either. Their estimates of the distance of the car from them was a mere estimate, in the nature of things incapable of exact measurement. Shute fairly says: "I couldn't just tell how far back. We were going all the while." Swayne had the right to drive in the road

ahead of the car, in the wheel tracks, near the rails. There was no evidence to show how much of the travelled way was fit for travel. Swayne's duty was to have exercised reasonable care, and turned away from the railway track as soon as he was warned of the approach of the car. He says, and Shute says, he did this, and did it before the motorman rang his gong. The motorman, who located Swayne on the west-bound track, testified: "Q. And he kept on, did he, for some time, driving about a car length ahead of you? A. Not for some time. When he heard the car he turned right at once to the right, but he didn't drive out of the way quick enough to get clear. Q. So as to come across your track? A. Yes."

So that all of the witnesses who testified upon the subject agreed that the plaintiff tried to get out of danger immediately upon learning of it. And as this accords with what the average man similarly situated would have done, it would seem to settle the issue of contributory negligence in favor of the plaintiff, and if not that, at least to have compelled its submission to the jury.

The verdict was set aside because the negligence alleged had not been proven. In my judgment both issues, negligence, and contributory negligence, should have been submitted to the jury.