ALEXANDER PLONA, ADMINISTRATOR, *vs.* THE CONNECTICUT COMPANY ET AL.

Second Judicial District, Norwich, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

A verdict for the plaintiff which can be supported only upon the theory of intervening negligence, should be set aside as one founded upon mere surmise or conjecture, unless there be testimony establishing the existence of the conditions upon which that doctrine rests.

Argued October 21st—decided November 5th, 1924.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate and

alleged to have been caused by the defendants' negligence, brought to the Superior Court in New London County and tried to the jury before *Avery, J.;* verdict and judgment for the plaintiff for $5,000, and appeal by the defendants for alleged error of the trial court in refusing to set aside the verdict as against the evidence. *Error and new trial ordered.*

Resolving all conflicts of testimony in the plaintiff's favor, the material facts which the jury might reasonably have found or inferred from the evidence, are as follows: At Waterford the trolley track runs close to the northern edge of the traveled portion of the Boston post road, and both track and highway are straight for a long distance east of the place where the decedent was struck and killed. The decedent and her husband, the plaintiff, lived in the westernmost of three houses north of the highway; the Prest house was nearly two hundred feet to the east, and from its easterly side a driveway extended across the trolley track to the traveled road; about one hundred and forty feet east of this driveway was the Bernstein house. Plona sold milk to the Bernsteins and on the evening of the accident the decedent delivered milk at the rear of the Bernstein house, and was last seen by Mrs. Bernstein walking rapidly south in the Bernstein yard on a path leading toward the highway. It was then dark and there was no direct testimony as to the course taken by the decedent after she left the Bernstein house, except that of the motorman who testified that he first saw her as she stepped across the north rail of the track directly in front of the car, which was running west, at a point somewhere about the Prest driveway. The jury might reasonably have refused to believe this story. There were three ways used by pedestrians any one of which the decedent may have taken in going westerly from the Bernstein house to the place where she was struck; she may have crossed

the track at or near the Bernstein house and walked some part of the way in the traveled roadway. She may have walked between or close to the rails of the track for the whole or some part of the way, or she may have followed a somewhat rough path north of the track and within the limits of the highway to or near a drainage ditch a few feet east of the Prest driveway, where the path stops.

In following any of these courses she would have remained within the range of the headlight of the trolleycar.

After the accident the decedent's body was under the car which was stopped in front of the Prest house; there was blood on the track in front of the Prest driveway, her shoe was found there, and the next morning the heel of the shoe was found a few feet east of the driveway. The motorman also testified that because an automobile was approaching from the west he had turned off the arc headlight of the car and switched on a less powerful incandescent headlight before passing the Bernstein house.

*Charles B. Whittlesey*, with whom was *Charles L. Smiddy*, for the appellants (defendants).

*Frank L. McGuire*, for the appellee (plaintiff).

PER CURIAM. Assuming that the jury did not believe the motorman's story, there was no testimony as to the decedent's movements between the Bernstein house and the place of the accident. There was testimony that the track was commonly used as a foot path; that it was considered unsafe to walk in the traveled roadway because of the density of traffic, and that the path north of the track was rough. This testimony may afford some uncertain basis for inference as to the prob-

able conduct of a foot passenger traveling along the highway; but it affords no basis for inference as to the probable conduct of the decedent who was coming from the Bernstein house north of the track. The only testimony bearing on the probable conduct of foot passengers going west from the Bernstein house is that of Mrs. Bernstein, who testified that she usually followed the path north of the track.

While there was sufficient evidence that the motorman was negligent in not seeing and warning the decedent, there was no evidence that the decedent was in the exercise of due care. Hence the verdict cannot be upheld except upon the theory which the trial court adopted in denying the motion to set the verdict aside; namely, that the jury might reasonably have found that the decedent continued to walk on or close to the track in front of the overtaking trolley-car for such a time and distance that the motorman ought to have seen her and to have become aware that she was not going to save herself, while there was still time for him to have stopped the car or otherwise to have avoided injuring her. *Mullen* v. *Mohican Co.*, 97 Conn. 97, 115 Atl. 685; *Fine* v. *Connecticut Co.*, 92 Conn. 626, 103 Atl. 901.

The burden of proof being on the plaintiff, we are of opinion that the jury could not have found that such a state of facts existed, without indulging in surmise and conjecture, and that the court erred in denying the motion to set aside the verdict.

There is error and a new trial is ordered.