VINCENT SIMAUSKAS vs. THE CONNECTICUT
COMPANY.

Third Judicial District, New Haven, January Term, 1925.
WHEELER, C. J., BEACH, CURTIS, KEELER and HAINES, Js.

The plaintiff, a boy five years of age, was seen to leave the southerly side of Bank Street in the city of Waterbury, with the apparent intention of crossing the street, at the same time that the defendant's westbound trolley-car had stopped to discharge passengers at a point seventy-two feet distant. He was next observed lying on the north side of the westbound track with his feet under the trolley-car, which had passed over him inflicting the injuries for which he brought this action. *Held* that in the absence of any testimony tending to show that the plaintiff came within the range of the motorman's vision after the car started from its stopping-place, the trial court properly set aside a verdict for the plaintiff, since the jury's conclusion that there was negligence on the part of the motorman which proximately caused the accident could have been reached only by the unwarranted process of surmise or speculation.

Argued January 23d—decided February 23d, 1925.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negli-

gence, brought to the Superior Court in New Haven County and tried to the jury before *Banks, J.;* verdict for the plaintiff for $5,000, which the court, upon defendant's motion, set aside as against the evidence, and from this decision the plaintiff appealed. *No error.*

*Joseph C. Guilfoile,* for the appellant (plaintiff).

*Walter E. Monagan* and *Maurice T. Healey, Jr.,* for the appellee (defendant).

BEACH, J. The trial court set aside the verdict on the ground that there was no testimony from which the jury could reasonably have found that the plaintiff's injuries were proximately caused by the defendant's negligence.

The plaintiff was a boy five years old, and his injuries were caused by contact with a moving trolley-car operated by defendant's servants. The accident occurred at the intersection of Riverside Street and Bank Street in the city of Waterbury. At that place Bank Street runs nearly east and west, and passes under the tracks of the New York, New Haven and Hartford Railroad Company, a short distance west of its intersection with Riverside Street, which is called North Riverside Street on the north side of Bank Street and South Riverside Street on its south side. There is a crosswalk over Bank Street on the easterly side of the intersection and none on its westerly side. North Riverside Street and South Riverside Street are provided with crosswalks at their intersections with Bank Street. On Bank Street east of Riverside Street the trolley track is single up to a point about one hundred feet east of the intersection. West of that point and across the intersection, the track is double and runs westerly toward the center of the city.

Just before the accident the westbound trolley-car which injured the plaintiff stopped at a regular stopping place about forty feet east of the east line of Riverside Street, to take on passengers.

The plaintiff's twelve-year-old brother testified that they had been playing together in South Riverside Street, that, intending to cross Bank Street, he stopped on the South Riverside Street crosswalk and saw the westbound trolley-car standing at its stopping place taking on passengers. His brother, the plaintiff, was eight feet behind him. He then ran across Bank Street to a shop on its north side and made a purchase, and when he came out, saw a crowd about his injured brother. The distance from the point where the witness started to cross Bank Street to the stopping place of the trolley-car, is seventy-two feet. Bank Street at that place is a little less than thirty-five feet wide. The plaintiff himself was put on the witness stand and withdrawn when it became apparent that he did not understand the nature of an oath.

Mrs. Ficeto was wheeling her baby carriage westerly on the south sidewalk of Bank Street; she stopped long enough to see her sister-in-law get on the trolley-car, and had reached the South Riverside Street crosswalk when she saw children running across Bank Street. She testified: "The people were getting on the trolley-car and I saw the children going across." Q. "They were going across at that time?" A. "Yes, surely." Then she bent down over her baby carriage, and when she looked up saw the plaintiff lying in the street. She did not then see the trolley-car.

Zabot, a passenger standing on the rear platform, testified that he heard a noise and felt a bump, as if the wheels of the rear truck had run over something and dropped back on the rails; he looked out and saw the child lying between the two tracks, his feet near

the north rail of the westbound track and his head away from it. He called, or attempted to call the attention of the conductor to the fact that an accident had happened, but the trolley-car did not stop.

Two ladies were walking together on the north sidewalk of Bank Street just west of North Riverside Street. One of them, Miss Brennan, saw the child lying in the street before the trolley-car had cleared it, when it was about one third of its length from the front of the car, and its foot appeared to be under the car. She attempted in vain to stop the car, which passed under the railroad tracks and disappeared around a curve. Her companion first saw the child after the car had passed beyond it, and she ran out and carried the injured child to the sidewalk. Another witness stood on the Bank Street crosswalk as the trolley-car passed; the trolley man had his face turned to the left; then some one called his attention to the child lying in the street. The trolley man testified that he was looking ahead, that he saw no children run across the track, or in the street, and that he did not know or hear of the accident until the car reached the center. The conductor testified that as the car left Riverside Street he went forward giving out transfers, and that when he came back to the rear platform, a passenger said that an accident had occurred, and this was his first intimation of that fact.

As to the speed of the car, the jury might reasonably have found that it was at the rate of from fifteen to twenty miles an hour. No bell or other warning signal was sounded. All the witnesses agree that when their attention was first drawn to the plaintiff (Mrs. Ficeto did not identify the plaintiff as one of the children she saw before the accident), he was lying on the north side of the westbound track, with his feet toward its north rail and his head toward the north curb of Bank

Street.  This locates him on the opposite side of that track from the point where he was last seen by his brother.  No witness observed any of the plaintiff's movements from the time when his brother left him standing on the South Riverside crosswalk, at which time the trolley-car was taking on passengers at a point seventy feet distant.  Perhaps the jury might reasonably have inferred that he was among the children seen running across Bank Street by Mrs. Ficeto.  Even so, there is no evidence as to his movements with relation to the car after it started, until Miss Brennan saw him lying in the street.  Her testimony would justify a finding that the plaintiff was injured by contact with the car at or near its front end. The plaintiff's claim is that the plaintiff attempted to cross in front of the trolley-car, and that the motorman was negligent because the place was one where children were in the habit of running across Bank Street, and he ought to have seen that children were running across it, and to have foreseen that others might do so, and ought to have kept such a lookout and given such warning signals and operated his car at such speed as to avoid injuring them.

The plaintiff's difficulty on this appeal is that there is no evidence which directly or by logical inference tends to show that the plaintiff at any time came upon the street within the range of vision of a motorman keeping a careful lookout, and operating his car with a view to the possibility that children might run across the street; nor that the plaintiff came upon or approached the track apparently purposing to cross it in such time as to have charged the motorman with knowledge of his act or purpose, and hence to have made it the duty of the motorman to exercise reasonable care to avoid striking him; nor, in short, that the contact which injured the plaintiff was caused by any

negligent act or omission of the motorman. As the plaintiff was only five years old, it may be that he was not bound to prove that he exercised due care; but the burden of proof was on the plaintiff to adduce evidence of facts from which the jury might reasonably have found that the defendant's motorman was negligent as alleged and such negligence was the proximate cause of his injuries. We have repeatedly held that the plaintiff, in actions of this kind, is bound to remove the issues of negligence, or contributory negligence, from the realm of speculation, and to establish facts affording a logical basis for the inferences which he claims. *Mesite* v. *Connecticut Co.*, 82 Conn. 403, 74 Atl. 684; *Fay* v. *Hartford & Springfield Street Ry. Co.*, 81 Conn. 330, 71 Atl. 364; *Kruck* v. *Connecticut Co.*, 84 Conn. 401, 80 Atl. 162; *Mullen* v. *Mohican Co.*, 97 Conn. 97, 115 Atl. 685; *Plona* v. *Connecticut Co.*, 101 Conn. 445, 126 Atl. 529.

There is no error.

In this opinion the other judges concurred.