E. GILBERT MARTINO, ADMINISTRATOR, *vs.* THE CONNECTICUT COMPANY.

First Judicial District, Hartford, May Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued May 16th—decided July 25th, 1929.

*Louis M. Schatz,* with whom were *Joseph B. Griffin* and *Nathan A. Schatz,* for the appellant (plaintiff).

*James W. Carpenter,* for the appellee (defendant).

MALTBIE, J.   As the decedent was riding upon the seat of a truck which was proceeding easterly toward Manchester his hat blew off.   Thereupon the driver of the truck stopped it near the right side of the paved roadway, with its rear end about four feet and four inches away from a single track railway of the defendant company and its front somewhat further away. The hat came to rest on the pavement of the roadway in the rear of the truck.   The decedent stood up, looked around to see where his hat was and then got off the truck on the side nearest the track.   He was struck and killed by a trolley car of the defendant company which was being operated in a westerly direction.   At the time he was struck he was about opposite the middle of the truck, which was fourteen feet long.   The evidence was in conflict as to the position of the trolley car when he alighted, and its speed, and consequently as to the time which must have elapsed between his alighting and the accident; and no witness claimed to have seen him from the time he started to dismount until he was struck.

The plaintiff relies upon the version of the accident given by his own witnesses and the inferences he draws therefrom and no good purpose would be served by considering the case from the very contrary version given by the motorman of the trolley as a witness for the defendant.   According to the driver of the truck, at the time the decedent alighted the trolley car was

just coming over the brow of a hill about five hundred feet away. This testimony, it is true, might have been discredited by the jury because of a written statement claimed to have been given by him soon after the accident in which he said that the decedent started to get down from the truck about the time the front of the trolley passed it; but the jury were entitled to accept his sworn testimony upon the witness stand, particularly as it was corroborated by that of a passenger in the trolley, also a witness for the plaintiff, who stated that as she sat in it when it came over the hill and began to descend toward the truck she saw the truck and then and thereafter observed no one in the seat except the driver. While the motorman gave the speed of the trolley as not over ten miles an hour at any time between the top of the hill and the place of the accident and stated that he slowed down to five miles as he approached the truck, this witness on the other hand stated that the trolley seemed to be going "at great speed," "rapidly" and that it never slackened up; and there was also other evidence that it went one hundred and eighty feet after striking the decedent before it came to a stop. If the testimony of the motorman as to the speed of the car were accepted, it would result that more than thirty-three seconds elapsed between the time the decedent alighted from the truck and the moment of the accident; but of course the jury were entitled to accept the testimony of the passenger as to the speed of the car, and if they did so, they might have concluded that a less time had elapsed; but how long a time would have been conjectural, for such expressions as the witness used are entitled to but little weight as definite statements of speed. *Swayne* v. *Connecticut Co.*, 86 Conn. 439, 444, 85 Atl. 634, 737. Certainly if, as the plaintiff claims, the trolley car was at the top of the hill five hundred

feet away when the decedent began to alight from the truck, they would not have been justified in finding that no longer a time had elapsed than would have been necessary for him simply to get down to the roadway. What did he do in the interval between the time he alighted and the time of the accident? Did he wait in the narrow space between the truck and the track for the trolley to pass, and if so, how did he come in contact with it? It did not appear in evidence how far away his hat was from the rear of the truck nor does it appear that it was found on the roadway after the accident. Did he reach it and, in returning, did he come quickly around the rear of the truck into the space between it and the track just as the trolley car reached it? Such questions as these emphasize the uncertainty in which the immediate circumstances of the accident were left and make a conclusion that the decedent was in the exercise of reasonable care one of mere conjecture or surmise. Such a conclusion could not be sustained. *Simauskas* v. *Connecticut Co.*, 102 Conn. 61, 66, 127 Atl. 918. No less is this true of the appeal the plaintiff makes to the doctrine of supervening negligence. With no evidence in the case from which the jury could reasonably find the position of the decedent prior to the accident or the time when he came into a situation of peril, it would not be possible to conclude that after he had come into such a situation the motorman perceived or ought to have perceived his danger and that he could or would not escape from it, in time to avoid the accident, by the exercise of reasonable care. *Oddwyzc* v. *Connecticut Co.*, 108 Conn. 71, 74, 142 Atl. 466.

There is no error.

In this opinion HINMAN and BANKS, J., concurred; WHEELER, C. J., and HAINES, J., dissented.