HEBERT *v.* LENART, et al.

No. 42633 May 13, 1963 153 So. 2d 658

*Rae Bryant,* Gulfport, for appellant.

*Walter L. Nixon, Jr.,* Biloxi, for appellees.

Kyle, J.

This case is before us on appeal by Lawrence Hebert, who is also referred to in the record as "Lawrence Herbert," defendant in the court below, from a judgment of the Circuit Court of Harrison County rendered in favor of Maynard Lenart, Dorothy Dell Lenart and Rhonda Gail Lenart, a minor, plaintiffs in the court below, in an action for damages for the wrongful death of Maynard Glenn Lenart, a minor five years and eight months of age, who was run over and killed by a school bus being driven by the appellant on Ridgeway Drive, in the City of Biloxi, on May 4, 1960.

The plaintiffs, Maynard Lenart and his wife, Dorothy Dell Lenart, are the father and mother of the deceased, and the plaintiff, Rhonda Gail Lenart, is a minor sister of the deceased. The three constitute the only next of kin of the deceased entitled to sue under the wrongful death statute. The defendant, Lawrence Hebert, at the time of the accident complained of, was employed as a school bus driver for the Biloxi Municipal Separate School District on a route which included Ridgeway Drive.

The record shows that Ridgeway Drive is a street approximately 28 feet wide running in a general easterly and westerly direction through a residential section of the city. The accident which resulted in the death of Glenn Lenart occurred about 2:15 P. M. at a point on Ridgeway Drive immediately east of the intersection of Ridgeway Drive by Dewey Circle, a street running northwardly from Ridgeway Drive. Hebert had stopped his school bus on the south side of Ridgeway Drive close to the curb and immediately west of a telephone pole shown in the photograph of the scene of the accident, for the purpose of discharging the school children who resided in the vicinity of the intersection. After discharging the two or three school children who lived in close proximity to the intersection, Hebert checked

his side view and rear view mirrors, and then pulled away from the curb and started eastward along Ridgeway Drive. He had gone only a few feet when he heard a noise and felt something like a bump. He brought his bus to a stop immediately and found that the left rear wheel of the bus had passed over the body of Glenn Lenart, a small boy who lived on Dewey Circle about half a block north of the street intersection. The child's bicycle was lying by his side. The testimony shows that the bus stopped at an angle, with the front of the bus headed in a northeasterly direction slightly over the center line of Ridgeway Drive. The child's body was lying near the center of the drive, with most of his body lying south of the center line. The child was carried to the Biloxi Hospital immediately. His body was badly mangled, and the child died about 5:15 A. M. the following morning.

The plaintiffs' declaration was filed on August 21, 1961. The declaration charged that the defendant was negligent in failing to maintain proper control of his vehicle, and in failing to keep a proper lookout for traffic, including bicyclists and other persons using the street, and by failing to make certain that he could safely drive his bus away from the curb and out into the street. The case was tried at the August 1962 term of the court. The jury returned a verdict for the plaintiffs in the sum of $27,000, and judgment was entered in favor of the plaintiffs for that amount. From that judgment the defendant has prosecuted this appeal.

In view of the nature of the errors assigned and argued on behalf of the appellant as grounds for reversal of the judgment of the lower court, it is necessary that we give a summary of the evidence upon which the jury based its verdict.

Lawrence Hebert was called to testify as an adverse witness by the plaintiffs. Hebert testified that he was a regular school bus driver for the route which in-

cluded Ridgeway Drive. He knew that the area around the Dewey Circle intersection was a residential area in which there were many children who were accustomed to play and ride their bicycles on the lawns and in the street. But the children were not accustomed to stopping around the school bus, and he never knew of a child passing the school bus on his bicycle. Hebert stated that his bus was equipped with a rear view mirror which gave him a clear view of the whole left side of the bus. He stated that the weather was clear on the day that Glenn Lenart was killed. He could see clearly ahead of the bus when he pulled out from the curb. There were no cars parked ahead of him to block his view. He stated that before he pulled off from the curb he checked his mirrors and shifted his gear into first. He then checked his mirrors again before he let go the clutch. Hebert stated that he never saw the child before he ran over him. The child was not anywhere close to the bus when he pulled away from the curb. Hebert stated that he had gone about 26 feet when he brought his bus to a stop. He found the child lying on the pavement about 2½ feet from the rear end of the bus. The dual rear wheel on the left side of the bus had run over the child's body. He did not know what part of the bus struck the child, but he did know that the front side of the bus never hit him. Hebert stated that he pulled off from the curb on an angle so as to miss the telephone pole standing immediately south of the curb. In answer to a direct question by the plaintiffs' attorney, Hebert stated that, prior to the date of the accident which resulted in the death of Glenn Lenart, he had never had trouble with children on Ridgeway Drive being too near the school bus; he had never had children out in the street near the bus and would have to ask them to move.

On direct examination by his own attorney Hebert again stated that immediately before he pulled away from the curb he looked in his side view or rear view

mirrors, and then he looked ahead; that the child was nowhere in sight when he pulled away from the curb. He stated that, when he stopped his bus after striking the child, no part of the bus was over on the north side of the highway. Hebert stated that he had about thirty-five children on the bus when he came to a stop at the Dewey Circle intersection. Three little girls left the bus at the intersection. Two of the little girls live on the south side of the street and did not have to cross the street. The other little girl told him that she was going to play with the two little girls who lived on the south side of the street; and that was the reason why he did not have a flagman to assist her in crossing the street.

Mrs. Shirley Etherton, a registered nurse, who lived at 2908 Ridgeway Drive, testified that she was talking on the telephone in her front bedroom which faced Ridgeway Drive at the time the accident occurred, and when she looked up she saw Glenn Lenart and his bicycle under the left side of the school bus, which was the side nearest the center of the street. She did not see the child go under the bus, and she did not know how he got there. The bus was in motion, going forward, and Glenn and his bicycle seemed to be tumbling to the rear at the same time. Glenn was about midway under the bus, behind the front wheel, and she saw the left rear wheel of the bus roll over him. She ran out into the street immediately. Mr. Hebert, the bus driver, got to the back of the bus about the same time. She called to him not to pick up the child. She stated that the child was conscious, but one of his legs was twisted and obviously broken. The bus was standing at an angle facing northeast. The front end of the bus appeared to be over the center line of the street on the north side. Mrs. Etherton testified that the accident occurred in a residential area, and there were many children who rode bicycles on the street. On cross-examination Mrs.

Etherton stated that, when she arrived at the scene of the accident, Glenn's head pointed northwestwardly; the rest of his body pointed toward the south and was about even with the east curb of Dewey Circle.

Joseph Dwight Dyess testified that he was 12 years old and that he lived at 2903 Ridgeway Drive, a short distance east of the Dewey Circle intersection. He was at home getting over the measles, the day the accident occurred. He stated that he saw Glenn Lenart on Ridgeway Drive several blocks west of the Dewey Circle intersection sometime prior to the arrival of the school bus at the intersection. He could not see the school bus at that time. Dyess stated that when he last saw Glenn he was under the bus about midway between the front wheel and the rear wheel, toward the north side. He looked like he was rolling about the middle of the bus, rolling backwards. The bus was moving at that time, pulling out from the curb. Dyess stated that there were no sidewalks in the area, and the little children rode their bicycles in the street. Dyess, however, would not state that children in the neighborhood rode their bicycles a lot of times near the school bus when it came by. Glenn was the only one that ever rode near the school bus, so far as he knew. The school bus stopped about even with the telephone post, and when the bus driver started it angled out from the curb. When he saw Glenn's body rolling under the bus Glenn's head was slanting about the center of the road a little east of the telephone pole, and most of Glenn's body was south of the center line of the road.

Mrs. Dorothy Dell Lenart, Glenn's mother, testified that she and her husband and two children lived about half a block north of the Dewey Circle intersection with Ridgeway Drive; that her neighbor, Mrs. Shirley Etherton, came to her front door and said to her, "Come quick, Glenn has just been run over by the school bus;" that she ran to the corner immediately, and found the

boy lying in the street about fifteen feet behind the bus, his body crushed and mangled. An ambulance was called and the child was carried to the hospital. His condition was very critical, he was in much pain, and he constantly begged for water. He died in the Biloxi Hospital about 5:15 A. M. the following morning. Mrs. Lenart was asked, ''When was the last time you saw Glenn before you found him lying in the street?'' Her answer was, ''Just about five or ten minutes before that.'' Mrs. Lenart stated that the area in which they lived was thickly populated and there were many children living and playing in the neighborhood; that Glenn was a student in Kindergarten at the time he was run over by the school bus; that he had received his bicycle for Christmas in December, and it was sometime in February when his father removed the training wheels; that he had been riding the bicycle in the street since that time.

A. J. Romero, who was called to testify as a witness for the defendant, stated that he was a deputy sheriff at the time the accident occurred, and that he had made an investigation of the accident on the day the child was injured. He stated that when he arrived at the scene of the accident the school bus was about three feet away from the curb. The child's bicycle had been put over on the lawn of a dwelling house just opposite the bus. The debris, which appeared to mark the place where the accident occurred, was under the left rear wheel of the bus. The bus looked like it had moved two or three feet from the debris which consisted of mud and dirt.

The appellant's attorneys have assigned and argued four points as grounds for reversal of the judgment of the lower court, as follows: (1) That the court erred in overruling the defendants' motion for a directed verdict at the conclusion of the evidence offered on behalf of the plaintiff, and in refusing to grant the defendants' request for a directed verdict at the conclusion of all of the evidence; (2) that the court erred in overruling

the appellant's motion for a new trial on the ground that the verdict of the jury was against the overwhelming weight of the evidence; (3) that the court erred in refusing to grant the defendant a new trial on the ground that the amount of the verdict of the jury was so excessive as to show bias and prejudice against the defendant; (4) that the court erred in granting two instructions requested by the plaintiff.

We think the court erred in refusing to grant the defendants' request for a directed verdict at the conclusion of all of the evidence.

Blashfield says: "The fact that an automobile collision occurred and that someone was injured, or that damage was done, standing alone, will not support a verdict in an action for injuries sustained in the collision.

"Evidence may be direct and positive or circumstantial. Circumstantial evidence may at times prevail over direct proof. However, verdicts must be founded on probabilities according to common knowledge, common experience, and common sense, not on possibilities, and cannot be based on speculation, surmise, or conjecture. Facts and circumstances proven must be such that necessary facts to support a verdict may be inferred and must reasonably follow, and such evidence must exclude guesswork, conjecture, and speculation as to the existence of necessary facts." Blashfield Cyclopedia of Automobile Law and Practice, Vol. 10, Sec. 6551, pp. 343, 344, 345.

The plaintiffs alleged in their declaration that the defendant was guilty of negligence in failing to maintain proper control over the vehicle which he was operating, and in failing to maintain a proper lookout for traffic, including bicyclists and other persons, as he drove his bus away from the south curb of Ridgeway Drive into the center of the street and into the immediate path of Glenn Lenart who was then and there riding his bicycle in an easterly direction on Ridgeway Drive, and

in such manner as to knock Glenn Lenart to the ground and cause the wheel of the bus to run over him and his bicycle.

 The evidence offered on behalf of the plaintiffs, in our opinion, was insufficient to show that the defendant was guilty of negligence in failing to maintain proper control over the vehicle which he was operating, or in failing to maintain a proper lookout for bicyclists and other persons using the street, as he pulled away from the curb of Ridgeway Drive after discharging the three passengers who got off the bus at the Dewey Circle intersection. There is no evidence in the record to show that Glenn Lenart was near the bus, or within the range of vision of the defendant at the time the defendant looked into his rear view and side view mirrors, or at the time he shifted his gears, released his clutch and started the bus to moving. There is no evidence in the record to show whether Glenn Lenart entered the street intersections from the west along Ridgeway Drive or from the north along Dewey Circle. No witness observed any of the child's movements from the time he was seen by Joseph Wright Dyess two or three blocks west of the Dewey Circle intersection sometime before the bus arrived at the intersection, until Mrs. Shirley Etherton and Joseph Dwight Dyess saw him rolling under the bus as it was leaving the curb. There is no evidence as to the child's movements with relation to the bus immediately before or after it started.

The rule imposing on the plaintiff the burden of proving negligence has been applied by the courts in many death actions, and in actions for injuries to children. Blashfield, Vol. 9C, Perm. Ed., p. 25, Sec. 6094; Farquhar v. Larson (1936), 121 Conn. 709, 186 A. 498; McClain v. Swearingen (1942), 152 Fla. 11, 10 So. 2d 564; Johnston v. New Omaha Thompson-Houston Electric Light Co. (1907), 78 Neb. 27, 113 N.W. 526, 17

L.R.A. (N.S.) 435; Perry v. Herrin (1945), 225 N.C. 601, 35 S.E. 2d 883; 65 C.J.S. 980, Negligence, Sec. 216.

■■ ■ Proof of the fact that the child was run over by the bus as it pulled away from the curb near the telephone pole was not sufficient in itself to show that the defendant was negligent in not seeing and avoiding striking him. Mere proof of the collision does not establish negligence on the part of the defendant driver. As stated by the Virginia Court in Hoier v. Noel (1957), 199 Va. 151, 98 S.E. 2d 673, the burden was on the plaintiffs to show that the child was in the street a sufficient time before the collision, and in a place within the range of vision of the bus driver, for the defendant, in the exercise of ordinary care, to have seen him and avoided striking him. But, as stated above, there is no evidence as to when the child came into the intersection, how he got there, or what the position of the bus was when he got there.

In the case of Simuaskas v. Connecticut Co. (1925), 102 Conn. 61, 127 A. 918, the Court held that in an action for injuries to a boy five years old who was run over by a street car, the evidence was insufficient to show that the plaintiff came within the range of vision of the motorman keeping a careful outlook, or approached the track in such time as to have charged the motorman with knowledge of his act or purpose, or that the injury to the plaintiff was caused by any negligent act or omission of the motorman. The Court also held in that case that, in an action for injuries to an infant run over by a street car, though the plaintiff may not have been bound to prove his due care, the burden was on him to show the facts from which the jury might reasonably find that the motorman was negligent, and that such negligence was the proximate cause of the plaintiff's injuries. The Court in its opinion said: "No witness observed any of the plaintiff's movements from the time when his brother left him standing on the

South Riverside crosswalk, at which time the trolley car was taking on passengers at a point 70 feet distant. Perhaps the jury might reasonably have inferred that he was among the children seen running across Bank Street by Mrs. Ficeto. Even so, there is no evidence as to his movements with relation to the car after it started, until Miss. Brennan saw him lying in the street.''

In the case of Westenburg v. Johnson (1935), 221 Iowa, 134, 264 N. W. 18, a father sued for a minor son's death claimed to have resulted from the truck driver's failure to take precautions or to maintain a lookout in starting and driving his truck. The Court held that the evidence as to the negligence of the truck driver, who, after loading the truck with corn from a corn sheller and proceeding some 60 feet, ran over the four-year-old boy whom the driver had ordered off the truck prior to loading thereof, was insufficient to make an issue for the jury; and in its opinion the Court said: ''There is not one bit of evidence to show where this child was during the period of time that the truck traveled the 60 feet. There is no claim here that the child ran in front of the truck. Only the back wheels of the truck passed over the boy. It was a terribly unfortunate accident, but, before appellant can be held liable, there must be some proof that the injury occurred through some fault of his. Had there been evidence that the boy was in or near the truck at the time it started on its way to town, it would have been a different case, but there is no such evidence. The burden of proving negligence on the part of the appellant and that it was the proximate cause of the injury rested upon the appellee. He has failed to meet that burden. The motion to direct a verdict at the close of appellee's testimony should have been sustained, and the lower court erred in overruling same.''

In Farquhar v. Larson, Conn. (1936), 186 A. 498, the Court held that a 5-year-old child suing for injuries

sustained when she was struck by a motorist must prove that the motorist was guilty of negligence which was the proximate cause of the injuries, and that in such case the infant suing must remove the issues of negligence or contributory negligence from the realm of speculation and establish the facts affording a logical basis for the inferences which she claimed. The Court in its opinion said: ''When struck, the plaintiff was in the street in front of her home, and the point of the accident is fixed with considerable certainty as being about 9½ feet from the westerly curb of the street, which is 25 feet wide. The automobile was proceeding northerly and the child was struck by the left headlight. Skidmarks indicated that the brakes had been applied about 20 feet before the car struck the child, and that it proceeded some 30 or 40 feet after the accident before coming to a stop. When last seen by any witness, the child was looking through a fence about 7 feet easterly of the east curb of the street, watching some men at work, and no witness saw her thereafter until she was struck.'' The Court in that case affirmed the judgment based upon a directed verdict.

In Stanalonis v. Branch Motor Express Co. (1948), 358 Pa. 426, 57 A. 2d 866, where the evidence showed that a pedestrian was seen at the street corner when a tractor-trailer began making a left turn, coming within about two feet from the curb, and then a thud was heard as though something struck the aluminum body of the trailer, and the pedestrian was next seen as the rear wheels of the trailer passed over his body, the Court held that the evidence was insufficient as a matter of law to establish that the pedestrian's fatal injuries were the result of the driver's negligence. 12 P. S. Secs. 1601, 1602; 20 P.S. 772. The Court in its opinion in that case said: ''The position of Stanalonis and the place where he was standing when contact was made with the body of the trailer is not shown. Viewing the evidence most

favorable to decedent, there is none which suggests how he came to lie prostrate in the intersection, his head toward the sidewalk and feet toward the center of the intersection as the rear wheels of the trailer went over his body. Certain it is that the evidence of circumstances prior and subsequent to the contact is not such as to satisfy reasonable and well-balanced minds that the accident resulted from the negligence of the defendant. See Rowles v. Evanuik, supra; Pfendler v. Speer, 323 Pa. 443, 185 A. 618; Reardon v. Smith, 298 Pa. 554, 148 A. 860. The record does not present a question of conflicting credibility. It presents only conflicting theories as regards the happening of the accident.''

In Hoier v. Noel (1957), 199 Va. 151, 98 S.E. 2d 673, which was an action by the administrator of the estate of a 3-year old child against a motorist for the wrongful death of the child, who was killed when a tricycle on which he was riding was struck by an automobile, ▇▇ ▇ the Court held that the burden was on the administrator to show that the child was in the street a sufficient time before the collision and sufficient distance ahead of the automobile for the motorist in the exercise of ordinary care to have seen him and to have avoided striking the child; and the court affirmed the judgment of the lower court in favor of the defendant.

In Lenehan v. Nicholson (1957), 214 Md. 414, 135 A. 2d 447, which was an action for injuries sustained by an infant when struck by an automobile, where the evidence disclosed that the defendant was driving on the right hand side of the road at a reasonable rate of speed, and that when he saw the infant he was running straight across the road ten or fifteen feet from the defendant and directly towards his automobile, the Court held that the evidence of the defendant's negligence was insufficient to make a jury issue and the trial judge was correct in directing a verdict for the defendant. In its opinion in that case the Court said: ''From all

the evidence the driver was exercising reasonable care when Jimmy crossed the road directly in front of him. He was doing what any reasonable person would have done under the circumstances. Compare Heffner v. Admiral Taxi Service, 196 Md. 465, 77 A. 2d 127. To submit this case to a jury would allow them merely to speculate. There was no evidence of any act of negligence on the part of the defendants. Shafer v. State, 171 Md. 506, 516, 189 A. 273. The trial judge was correct in directing a verdict for the defendants."

In the case of Illinois Central R. R. Co. v. Cathey, Adm'r., 70 Miss. 332, 12 So. 253, the Court said: "Possibilities will not sustain a verdict. It must have a better foundation * * *. But we have considered the case as if all was proved which the plaintiff's evidence, accepted as true, tends to prove, and, thus viewed, there is a wide chasm between the matters referred to as the cause of the hurt and the injury received. This chasm has no bridge but conjecture, which is insufficient to maintain a jury in crossing to a verdict in any case."

In the case of Denman, Minor, Etc. v. Denman, Admr., Etc., 242 Miss. 59, 134 So. 2d 457, the Court held that whether injuries received by a passenger in an automobile collision on a rainy evening were caused by the negligence of the passenger's driver was not shown by circumstantial evidence with respect to the automobiles' positions shortly after the collision and was subject to speculation and conjecture, and a directed verdict for the driver's estate was proper.

Admitting all the plaintiffs' testimony and all inferences deducible therefrom to be true in the case that we have here, we think the plaintiffs failed to prove negligence on the part of the defendant in the operation of his school bus; and that the court erred in refusing to grant the peremptory instruction requested by the defendant.

510

For the reasons stated above, the judgment of the lower court is reversed, and judgment will be entered here in favor of the appellant.

Reversed and judgment rendered in favor of the appellant.

*McGehee, C. J., and Ethridge, Rodgers and Jones, JJ.,* concur.