IRVING, P.J.,
dissenting:
¶ 72. The majority finds that the circuit court did not err in denying the Paynes’ motion for a JNOV. Because I believe that Cleveland was negligent as a matter of law for failing to see what he should have seen, I dissent. I would reverse and render the circuit court’s judgment, and remand this case for a trial on damages and on the issue of whether Cleveland was acting within the course and scope of his employment at the time of the accident.
¶ 73. “A motion for JNOV is a challenge to the legal sufficiency of the evidence, and [an appellate court] will affirm the denial of a JNOV if there is substantial evidence to support the verdict.” Howard, 67 So.3d at 718 (¶ 22) (quoting Adcock, 981 So.2d at 948 (¶ 25)). However, if the evidence “point[s] so overwhelmingly in favor of the appellant that reasonable men could hot have arrived at a contrary verdict, [an appellate court is] required to reverse and render.” River Region Med. Corp. v. Patterson, 975 So.2d 205, 207 (¶ 7) (Miss.2007) (quoting Twin County Elec. Power Ass’n v. McKenzie, 823 So.2d 464, 468 (¶ 13) *815 (Miss.2002)). “In essence, judgments as a matter of law present both the trial court and the appellate court with the same question-whether the evidence, as applied to the elements of a party’s case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated.” Howard, 67 So.3d at 718 (¶ 22) (quoting United Servs. Auto. Ass’n v. Lisanby, 47 So.3d 1172, 1176 (¶ 8) (Miss.2010)).
¶ 74. Under Mississippi law, the driver of an automobile has a “duty to see what he should have seen.” Utz, 32 So.3d 450, 481 (¶ 102) (citing Bolden, 606 So.2d at 113-14). However, “[mjere proof of [a] collision does not establish negligence on the part of the defendant driver.” Hebert v. Lenart, 247 Miss. 494, 505, 153 So.2d 658, 662 (1963). The Paynes had the burden of proving that Marie was in Cleveland’s “range of vision” .for “a sufficient time before the collision” for Cleveland, “in the exercise of ordinary care, to have seen [her] and avoided striking [her].” Id. (citing Hoier v. Noel, 199 Va. 151, 98 S.E.2d 673, 675 (1957)).
¶ 75. In Hebert, a school-bus driver ran over a child and killed him. Id. at 495, 153 So.2d at 658. The bus driver had stopped the bus to let children who lived in the area off of the bus. Id., 153 So.2d at 659. He testified that “before he pulled off from the eurb[,] he checked his mirrors and shifted his gear into first. He then checked his mirrors again before he let go [of] the clutch.” Id. at 499, 153 So.2d at 659. He testified that “he never saw the child before he ran over him.” Id. The Mississippi Supreme Court held that there was insufficient evidence to show that the bus driver was negligent for failing to maintain a proper lookout. Id. at 504, 153 So.2d at 662. Specifically, the court noted:
There is no evidence in the record to show that [the child] was near the bus, or within the range of vision of the [bus driver] at the time [he] looked into his rear view and side view mirrors, or at the time he shifted his gear, released his clutchf,] and started the bus to moving.
Id. Consequently, the court held that the plaintiffs had failed to prove that the bus driver was negligent. Id. at 509, 153 So.2d at 664.
¶ 76. This case is distinguishable from Hebert in that there is sufficient evidence that Marie was in Cleveland’s range of vision as he drove forward looking for a parking spot and as he drove backward. It is undisputed that on the day of the accident, Marie had an appointment at the hospital’s Diabetes Self-Management Center. The elevators to the center are located at the far-left corner of the parking garage.[5] Marie parked her car on the right-hand side of the parking garage. There is not a pedestrian walkway in the parking garage, and pedestrians must walk behind parked cars and along the driving lane.
¶ 77. Cleveland testified that when he drove backward, he felt a “bump” at the rear tire on the driver’s side. Marie could not have been struck by Cleveland’s rear tire on the driver’s side if she had been walking on the right-hand side of the garage. Therefore, when Marie walked back to her car following her appointment, the only plausible path for her to have taken after she exited the elevators at the far-left corner of the garage was to proceed down the left-hand side of the garage and *816 then walk across the driving lane to her car parked on the right-hand side of the garage.[6] As Marie proceeded down the left-hand side of the garage, she would have been visible to Cleveland as he was driving forward, looking for an open parking space. In fact, Officer Thompson, testified that Cleveland told him that he had seen Marie walking by the driver’s side of his truck shortly before the accident.[7]
¶ 78. Marie also would have been visible to Cleveland as he was backing up, given his testimony regarding the precautions he allegedly took. According to Cleveland, when his wife alerted him to the open parking spot on his left, he applied the breaks, checked his left mirror, looked over his right shoulder and out the truck’s back window, and then checked his left mirror again. Seeing no one, Cleveland put his truck in reverse. Cleveland testified that as he started to back up, he turned over his right shoulder, his wife turned over her left shoulder, and they both looked out the back window as he backed up. Given the extensive efforts that Cleveland claims to have undertaken to ensure that the way was clear, it is improbable that he would not have seen Marie as he was backing up.
¶ 79. The majority states that “the parties presented conflicting [expert] testimony as to what Cleveland saw or should have seen.” Maj. Op. at (¶43). I think that this is a misreading of the evidence. I acknowledge that there was testimony from Dr. Parker, Cleveland’s expert, that if Marie had been standing outside of Cleveland’s “cone of vision,” she would not have been visible to Cleveland. However, had Marie been standing in that blind spot, she would not have been standing close enough to Cleveland’s truck to be struck as he was backing up. Further, even if she had at one point been standing in that blind spot, she would have had to move out of it as she made her way to her car. If Cleveland had taken the precautions that he claimed to have taken prior to backing up and while backing up, it would have been impossible for him not to have seen Marie. Therefore, there is no conflicting evidence regarding what Cleveland should have seen as he was backing up.
¶ 80. Cleveland also attempted to explain his failure to see Marie as he was backing up by speculating that she had fallen immediately before the accident. According to Marie’s medical records, she reported falls on June 17, 2007; February 7, 2008; and May 20, 2008. However, there is absolutely no evidence that Marie had fallen just prior to being run over by Cleveland. Further, Dr. Ralph Bell, the Paynes’ expert in general medicine and emergency-room care, opined that Marie would not have sustained the extensive injuries to her legs if she had fallen prior to being run over.[8] Cleveland offered no *817 medical-expert testimony to refute Dr. Bell’s opinion.
¶ 81. Based on the above, I believe that there was sufficient evidence that Marie was in Cleveland’s range of vision for a sufficient amount of time before the accident and that Cleveland was negligent for failing to see what he should have seen.[9] Cleveland’s testimony that he never saw Marie despite the substantial precautions he claimed to have taken prior to backing up, is improbable at best. Furthermore, his suggestion that Marie had fallen immediately prior to the accident is inconsistent with the nature of her injuries.
¶ 82. Our supreme court has previously held: “Where evidence is so contrary tó the probabilities when weighed in the light of common knowledge, common experience, and common sense that impartial, reasonable minds cannot accept it other than as clearly an improbability, it will not support a verdict.” Elsworth v. Glindmeyer, 284 So.2d 312, 318 (Miss.1970).
¶ 83. In Elsworth, a tractor collided with a car, killing the car’s driver. Id. at 314-15. Prior to the accident, the car was traveling north, and the tractor was traveling south. Id. at 314. The wrongful-death beneficiaries of the car’s driver alleged that “the tractor was in the wrong lane at the time of the accident.” Id. at 316. However, the jury determined that the tractor’s driver was not negligent. Id. at 313.
¶ 84. Our supreme court held that the jury’s verdict was against the overwhelming weight of the evidence. Id. at 317. The court noted that the only evidence that the tractor was in the southbound, or correct, lane before or at the time of the collision came from the tractor’s driver. Id. However, his testimony was refuted by the “numerous and uncontradicted physical facts.” Id. For example, it was undisputed that the tractor struck the car on the car’s right side, and the automobile had to be “pulled out from under the tractor.” Id. Additionally, “the oil from the tractor, and the debris, were all in the east or northbound lane of the road under the tractor and automobile.” Id. There was no debris in the southbound lane “save for a little glass.” Id. The court concluded that the jury’s verdict, which was based on the testimony of the tractor’s driver, was “clearly and manifestly against all reasonable probability.” Id. at 320.
¶ 85. Based on my review of the record, I am convinced that Cleveland was negligent as a matter of law because he failed to see what he should have seen. Additionally, the jury’s verdict, which was based on Cleveland’s testimony that he kept a proper lookout but never saw Marie, was against the overwhelming weight of the evidence. Therefore, in my judg *818 ment, the circuit court erred in failing to grant the Paynes’ motion for a JNOV.
¶ 86. For the above reasons, I dissent.
RUSSELL, J., JOINS THIS OPINION.

. Mitchell, the hospital's Director of Security, testified that there is an entrance to the hospital on the right-hand side of the parking garage, but he had reviewed the surveillance video from that entrance and did not see Marie enter or exit from that point. Therefore, we know that Marie exited from the elevators at the far-left corner of the garage because that was the only other entrance/exit point on that floor of the garage.

. In fact, Dr. Parker, the accident reconstruc-tionist retained on behalf of Cleveland and Schneider, stated in his report that based on the deposition testimony and the photographs of the scene that he reviewed, Marie "had been moving from the inner parking lanes (driver’s side of [Cleveland's] Chevrolet) to the outer parking lanes (passenger’s side of [Cleveland’s] Chevrolet) at some time prior to or during the accident.”

. Officer Thompson was at the hospital on the day of the accident for a doctor’s appointment, and had arrived at the parking garage shortly after the accident. He was not on duty.

. Marie’s medical records reflect that she had a tire-tread mark across her lower chesl/up-per abdomen. Additionally, she had major lacerations on both of her lower legs, exposed bone on her left knee, and exposed bone on her right tibia. Dr. Bell opined that these injuries resulted when the bumper of Cleveland’s truck struck Marie and the undercarriage of his truck passed over her lower legs.

. I pause briefly to note that I also believe that the circuit court erred in refusing jury instruction P-14 which states:
You are instructed that a motorist has a duty and is responsible for seeing what he should have seen under the circumstances. Failure to do so is negligence.
Therefore, if you find from a preponderance of the evidence in this case that the Defendant, Cleveland Gowdy, was driving his vehicle and failed to see Marie Payne before striking her and that such failure to see Marie Payne was negligence!,] and this negligence was a proximate cause or proximate contributing cause of Marie Payne’s injuries, then your verdict shall be for the Plaintiffs.
I disagree with the majority that Cleveland’s duty to see what he should have seen was adequately conveyed to the jury through other instructions. Under the instructions that were given, the jury was authorized to find Cleveland negligent if he failed to look behind him prior to backing up. Instruction P-14 would have authorized the jury to find Cleveland negligent even if he looked, provided that he failed to see something that he should have seen.